**ELBERT v. WAPLES–PLATTER CO.**

**CO.**

No. 14286.

Court of Civil Appeals of Texas.
Fort Worth.

Oct. 31, 1941.

Rehearing Denied Nov. 28, 1941.

Cantey, Hanger, McMahon, McKnight & Johnson, J. A. Gooch, and Ward B. Powell, all of Fort Worth, for appellant.

Samuels, Foster, Brown & McGee; Sidney L. Samuels, and Jesse M. Brown, all of Fort Worth, for appellee.

McDONALD, Chief Justice.

Mrs. H. R. Elbert, individually and as independent executrix of the estate of H. R. Elbert, her deceased husband, brought this suit against Waples-Platter Company to recover an undivided one-sixth interest in four sections of land lying in

Yoakum County, and for an accounting. To quote from her brief, she "claims by virtue of a constructive trust created by L. H. McKee prior to and at the time that L. H. McKee purchased a óne-half undivided interest in the above mentioned 2560 acres of land, it being the plaintiff's theory that L. H. McKee purchased the land with the understanding between himself, H. R. Elbert and Edgar Wallace that the three of them were to own a one-half interest jointly."

The following facts appear from the record to be undisputed. In 1916 one V. H. Thodberg was adjudged a bankrupt. Waples-Platter Company, whose corporate name then was Waples-Platter Grocer Company, and the First National Bank of Guthrie, Oklahoma, were among his creditors. These two creditors arranged to purchase from the trustee in bankruptcy the four sections of land in Yoakum County which are involved in this suit, and another section of land in Terry County. Waples-Platter Grocer Company, whom we shall hereafter designate as Waples-Platter, advanced the purchase price of $7,800 which was paid to the trustee in bankruptcy, and by agreement of the parties title was taken in the name of L. H. McKee, Trustee, who was a vice-president of Waples-Platter. McKee in turn conveyed a half interest in the five sections to P. A. Norris, president of the Guthrie bank, for the consideration of $3,900, which was paid to Waples-Platter, and upon agreement of Norris to pay half of the taxes and expenses. For reasons not necessary to state, the half interest which had been conveyed to Norris was later conveyed to Ned Holman, another officer of the Guthrie bank, and will hereafter be referred to as the Holman half interest.

In 1918 McKee conveyed to Waples-Platter the half interest he had held in trust for it.

In 1922 Holman executed a deed purporting on its face to convey his half interest to L. H. McKee. Chronologically speaking, the controversy of the parties begins here. Holman was paid $3,900 for his interest. Waples-Platter claims that it paid the $3,900, and that McKee took the title for its benefit. Plaintiff, who is the appellant here, claims that McKee paid the $3,900 to Holman, and agreed with Elbert and Wallace that the three of them would own this half interest jointly.

In 1923 Waples-Platter conveyed to McKee, as trustee, the half interest which he had conveyed to it in 1918, seemingly because it had been advised by counsel that a corporation could not acquire a patent to state school lands.

From 1923 until 1934 the entire legal title to the land remained in McKee. In 1934 McKee executed a deed purporting upon its face to convey the land to Waples-Platter.

H. R. Elbert died in 1929, and McKee and Wallace were both dead at the time of the trial.

In answer to special issues, the jury found:

(1) At the time of the conveyance from Holman to McKee, in 1922, McKee acquired the title for himself, Elbert and Wallace equally.

(2) The $3,900 paid to Holman was not paid out of funds of Waples-Platter.

(3) This issue inquired, if the jury should find that the $3,900 was paid out of the funds of Waples-Platter, whether it was charged to McKee. In view of the answer to the second issue, it did not require an answer.

(4) McKee agreed to hold in trust for H. R. Elbert a one-third interest in the land purchased from Holman.

(5) Such agreement of McKee was not made after the time of the conveyance from Holman.

Plaintiff moved for judgment upon the verdict, and defendant moved for judgment non obstante veredicto. The court sustained the latter motion, and rendered judgment for defendant. Plaintiff has appealed, presenting a single assignment of error to the effect that the trial court erred in rendering the non obstante veredicto judgment for defendant.

Mrs. Elbert claims that the evidence, and the reasonable inferences which may be drawn therefrom, are sufficient to support the verdict of the jury and to entitle her to judgment, in the following respects:

(a) When Waples-Platter first acquired a half interest in the property, there was set up on its books an account styled "Yoakum Land Account". When the Holman interest was conveyed to McKee, there was set up on the Waples-Platter books an account styled "Plains Land Ac-

count", and a debit of $3,900 was entered thereon. When, in 1924, the Terry County section was sold for $6,256, a credit of $3,128, one-half the sale price, was entered on the Plains Land Account. There were introduced in evidence, over objection of the defendant, audits of the books of Waples-Platter covering 1930, 1931, 1932, and 1934 transactions, which audits were accepted by the officers of the company. The 1930, 1931 and 1932 audits each show an item, in a schedule styled "Accounts Receivable Due From Officers, Stockholders and Employees", which reads as follows: "Plains Land (L. H. McKee) Fort Worth, Texas, $772.00." Subtracting $3,128, the credit entered after the sale of the Terry County section, from $3,900, the purchase price of the Holman interest, would leave $772.

(b) In the 1934 audit, made after the execution of the deed from McKee to Waples-Platter, the following item appears under the heading "Real Estate Not Used in Operations":

| "Farms, Ranches, Etc. | Known As | Location | Book Value | Encumbrance Not Taken Into Account |
|---|---|---|---|---|
| Five-Sixths Interest: Sections 565, 615, 616 & 617, Block D. | Yoakum County Land | Yoakum | $3864.40 | $3744.00." |

(c) Waples-Platter obtained a quitclaim deed from Edgar Wallace at or about the same time it obtained the deed from McKee in 1934. As has been mentioned, Elbert had theretofore died, in 1929.

(d) Upon at least three occasions officers of Waples-Platter prepared and presented to Mrs. Elbert statements relative to receipts and disbursements made in connection with the land, and called upon her either to pay her share or deed her interest to the company.

(e) Leasing of the land for oil was discussed with Mr. Ward Powell, Mrs. Elbert's son-in-law.

(f) Ward Powell testified that McKee told him that McKee, Elbert and Wallace together owned an interest in the land in controversy; that Elbert told him the same thing; and that Clyde Jones, vice-president of Waples-Platter, told Powell that he would send Mrs. Elbert a check for her share of the proceeds of the sale of certain oil leases as soon as he could figure up what she had coming to her; and that the officers of Waples-Platter discussed the matter of leasing the land with him, knowing that Mrs. Elbert claimed an interest, and that he assisted in selling some leases.

(g) William C. Wynn, formerly secretary of Waples-Platter, testified that he had seen a carbon copy of a letter, unsigned, but with the initials LHM on it, indicating that McKee had dictated it, stating that McKee held in his name in trust for Elbert and Wallace an interest in the Yoakum County land, and specifying the section numbers of the land.

(h) Appellant argues that the $3,900 paid for the Holman interest was never added to the book value of the Yoakum County land, although it is not clear to us from the record just what the books of the company showed in this respect.

(i) A letter was written by the officers of Waples-Platter and by them presented to Mrs. Elbert for her signature, which is addressed to Waples-Platter, and reads as follows:

"I hereby authorize you to proceed to effect the sale of Gas & Oil Lease, or leases on the land in Yoakum County Texas in which I own ⅙ interest with your Co., for the best price obtainable. I prefer that this land be leased in scattered quarter sections."

This letter is dated October 5, 1935, and was signed by Mrs. Elbert at her home at the request of Mr. McKinney, the vice-president and general manager of Waples-Platter, and Mr. Wynn, the secretary of the company.

(j) Plaintiff introduced in evidence, over objection of defendant, an ex parte affidavit of J. E. Wallace, made in 1935, to the effect that it was agreed by McKee, Elbert and Wallace that McKee would put up the money for the Holman interest, and that each would own a one-third interest in it.

It will be beneficial to review some of the settled rules relating to the manner in

which trusts in land may be established, and the kind and degree of proof that is required to show that a trust has been established.

■ The Texas courts have many times held that the legal and equitable ownership of property may be vested in different persons. Trusts may be divided into two classes, express and implied. It has been said that an express trust arises "either by express agreement or by the direct and positive acts of the parties by some writing or deed." Wacasey v. Wacasey, Tex.Civ.App., 256 S.W. 1020, 1022. "Every express trust may be considered as involving in some measure a promise on the part of the trustee to do some act for the grantor or some person named by him." Clark v. Haney, 62 Tex. 511, 50 Am.Rep.536.

■ When there has been no explicit language importing an intention to create a trust, a court of equity may infer that such was the intention of the parties, either from what they said or from what they did. The courts and the authors some times refer to this latter class of trusts as "implied trusts" or "constructive trusts" or "resulting trusts".

■ A "donative trust" may be created by the transfer of property in trust by way of a gift for the benefit of another person, or by a proper declaration of the legal owner of the property to the effect that he will hold it in trust for the benefit of another. 42 Tex.Jur. 607. Although appellant in her brief states that a constructive trust was created in the present instance, it is our opinion that the trust created, if in fact any was created, was an express trust. Appellant's contentions are entirely to the effect that L. H. McKee expressly agreed with Wallace and Elbert to hold the legal title in trust for their benefit.

■ "According to the American Law Institute, 'a resulting trust differs from an express trust in the manner of its creation, and in the nature and extent of the duties of the trustee'. It is a species of implied trust—one that arises from what the parties did, not from what they said." 42 Tex.Jur. page 635.

■ According to the same authority, resulting trusts may arise in cases in which property was bought in the name of A, but wholly or in part with funds furnished by B, or in cases in which A conveyed property to B, but in circumstances negativing any intention of making a gift to B, or in cases in which trust funds were invested in the purchase of property without authority but without any intention of defrauding the beneficiary, or in cases in which property was purchased by one occupying a representative or fiduciary capacity, so that the purchase necessarily inured for the benefit of his principal, or in cases in which an owner of land holds it subject to a lien in favor of another. 42 Tex.Jur. page 636.

■ We do not find any evidence which even suggests that the case on appeal falls into any of the above categories. It is not claimed that Mr. Elbert either paid any of the purchase price of the Holman interest, or that he obligated himself to do so. It is not and cannot be claimed from the evidence that there was any agreement between Holman and McKee that McKee should take the title to the land in trust for Elbert and Wallace. There was no fiduciary relationship between McKee on the one hand and Elbert and Wallace on the other. The most that can be said is that they were friends and were officers of the same corporation. A constructive trust could not have arisen under any view of the evidence produced in this case.

We are compelled to treat the case as an effort to prove the creation of an express donative trust, and shall undertake to make an analysis of the evidence detailed above, and the findings of the jury, to determine whether, viewing the matter most favorably to appellant, there is any proof in the record, of the kind required by law in such cases, sufficient to establish such type of trust.

■ It is well settled that a parol trust may be created when the beneficiary has paid all or a part of the consideration for the land, or has obligated himself to do so, under an agreement made prior to or at the time of the conveyance that the legal title should be held in the name of another for his benefit. But it must be remembered that proof must be made of both (a) his payment of or agreement to pay the consideration, and (b) an agreement made prior to or at the time of the conveyance that the legal title should be held in trust for his benefit. A payment of the consideration after the time of the conveyance, or an agreement to hold in trust made after the time of the conveyance, cannot alone be made the basis of a parol trust. Johnston v. Winn, Tex.Civ.App., 105 S.W.2d 398, writ dismissed; Wright v. Wright, 134

Tex. 82, 132 S.W.2d 847 (Com. of App. opinion adopted by S.Ct.); Allen v. Allen, 101 Tex. 362, 107 S.W. 528; Jones v. Siler, 129 Tex. 18, 100 S.W.2d 352 (Com. of App. opinion adopted by S.Ct.).

Under the above authorities and under McAlister v. Eclipse Oil Co., 128 Tex. 449, 98 S.W.2d 171, the trust claimed, whether it be classified as an express trust or a constructive trust, must have arisen, if at all, at the time the legal title passed from Holman to McKee. In fact, appellant's contentions are all to the effect that the trust was created at that time.

Except in cases where a power of revocation is reserved by the settlor, the interest of the beneficiary of a trust becomes vested when the trust is created. 42 Tex.Jur. page 630. Elbert and Wallace either became the owners of an equitable interest in this property, or they did not, at the time of the deed from Holman to McKee. Plaintiff does not base her case upon any claim of estoppel or other matter arising after the date of that conveyance.

If plaintiff claims a constructive trust, she must fail because there is no proof of payment of any of the consideration, or of any agreement to pay, by either Elbert or Wallace.

If she claims an express trust, she must fail because of the statute of frauds. Not only does she fail to prove that any writing was executed by McKee, but she states in her brief that a parol trust was created.

To summarize the rules applicable, a case of parol trust could be made out by showing that prior to or at the time of the conveyance from Holman to McKee, there was either an agreement between Holman and McKee that the latter should hold the title in trust, or by showing that prior to or contemporaneously with the conveyance McKee agreed with Elbert and Wallace to hold the title in trust for them, and by further proving that Elbert and Wallace either paid or agreed to pay a part of the consideration. Appellant does not even contend that she has made proof of all of these necessary elements.

To prove a donative trust, that is, one not requiring the payment of any of the consideration by Elbert and Wallace, it would be necessary to show either that there was an agreement between Holman

and McKee that the latter should hold the title in trust, which is not contended to be the case here, or that McKee agreed with Elbert and Wallace, in a manner not condemned by the statute of frauds, to hold the title in trust for their benefit. As we have already said, it is not contended, except as we shall note, that McKee made any agreement in writing to that effect. Or, to support a claim of parol gift, it would be necessary to prove that McKee put the beneficiaries in possession of the property, and that they made valuable improvements. As is said in 42 Tex.Jur. at page 607, "* * * where a trust is created by donation the law of trusts is superimposed on the law of gifts or the law of wills.".

As is said on page 674 of the same volume, "To admit parole evidence to establish a trust requires that the reception of such evidence shall be found not to violate (1) the statutes of frauds and conveyances or (2) the familiar 'parole evidence rule'. * * * By reason of the characteristics inherent in gifts, parole evidence of a donative trust will not be received where the nature of the property is such that writing is required to transfer the title to it." See also Allen v. Allen, 101 Tex. 362, 107 S.W. 528.

Again considering the findings of the jury, it will be observed that the jury did not find that McKee agreed in writing to acquire the title for himself, Elbert and Wallace, or to hold an interest in trust for them. The jury further found that such agreement as McKee did make was not made after the time of the conveyance from Holman. Under the verdict, the trust was either created prior to or at the time of the conveyance, or not at all. The jury also found that the $3,900 was not paid out of the funds of Waples-Platter, which is at variance with the theory presented in appellant's brief to the effect that Waples-Platter charged this $3,900 against McKee, in setting up the "Plains Lands Account" on its books, and in crediting thereto one-half the price received from the sale of the Terry County section.

Further considering the evidence adduced, the manner in which these transactions were recorded upon the books of Waples-Platter would not create a trust, if it did not theretofore exist, nor would any letters or statements prepared by the officers of Waples-Platter, or any conversations had between them and Mrs. Elbert

**152**

and Ward Powell. It is elemental that the officers of the corporation could not convey the lands of the corporation, or an equitable interest in them, in any such fashion. In fact, it is not contended that any of the acts or declarations of the officers of Waples-Platter created of themselves an interest in the property, but only that they constituted some evidence to prove that the trust had already been created. The ex parte affidavit of J. E. Wallace, as well as the testimony of Ward Powell concerning the declarations of Mr. Elbert to the effect that he owned an interest in the land, were clearly inadmissible as hearsay. And also, even if admissible, they could not create a trust interest if none had already been created. See Wise v. Haynes, Tex.Civ.App., 103 S.W.2d 477, holding that the declarations of the cestui que trust are not competent to establish the trust.

The outside audits of the company's affairs likewise could not create the trust, if it did not theretofore exist.

The testimony of Wynn concerning the unsigned carbon copy of a letter which he thought was dictated by McKee was not sufficient to establish the trust. Wynn did not know whether McKee actually dictated the original of the letter, or whether he signed it. Certainly this unidentified carbon copy of a letter, which might have been written by anyone, could not be accepted by the court as a conveyance of land which would satisfy the statute of frauds and the law of conveyances.

The courts all hold that a parol trust must be established by proof that is clear, satisfactory and convincing. White v. Hix, Tex.Civ.App., 104 S.W.2d 136, writ dismissed; Jones v. Siler, 129 Tex. 18, 100 S.W.2d 352.

Having failed to prove facts sufficient to create either a constructive trust or an express trust, plaintiff was not entitled to recover.

The judgment of the trial court is affirmed.