226 S.W.2d 737 (1950)
PUTNEY
v.
DU BOIS CO.
No. 6812.
Springfield Court of Appeals, Missouri.
January 10, 1950.
Allen & Woolsey, Springfield, Clarence O. Woolsey, Springfield, Gatch, Kleinmann, Roberts & Kuhn, Cincinnati, Ohio, Frank A. Roberts, Cincinnati, Ohio, for appellant.
Miller & Fairman, Springfield, Wm. P. Sanford, Springfield, M. J. McQueen, Springfield, for respondent.
VANDEVENTER, Presiding Judge.
This is an appeal from a default judgment. On the 5th day of December, 1944, plaintiff filed a petition in the circuit court of Greene County, Missouri, in the first count alleging that about November 1, 1942, she was employed by Heer's, Inc., in their department store at Springfield, Missouri. She worked at a lunch counter, and part of her duties was to wash dishes and glasses. That Heer's, Inc., purchased a washing compound known as "Dishwashing Compound No. 2" from the defendant, and that defendant knew or should have known that said compound would be used by the employees of Heer's Inc., for dishwashing purposes. That the plaintiff, as one of such employees, did so use said compound for about three weeks after November 1, 1942 and that said powder injured her hands until she was no longer able to work. That the powder was not such as was represented and warranted by the defendant. Plaintiff prayed judgment for the sum of $3,000.
In Count 2, plaintiff alleged that her injury was caused by the negligence of the defendant and that, "* * * the said Defendant, on and prior to the first day of November, 1942, carelessly and negligently caused and permitted said compound to be manufactured so that it contained certain injurious elements, the exact nature of which are unknown to Plaintiff, so that *738 when such compound was sold by Defendant to Heer's Inc., as aforesaid, and used by Plaintiff in the normal and usual way that such washing compound would be used, Plaintiff was injured as hereinafter set out."
She asked for $3,000 damages on Count 2.
Defendant filed an answer specifically denying all the allegations of the petition except to admit its incorporation and that it was engaged in the manufacture of soaps and washing compound, including a washing compound known as "Dish Washing Compound No. 2".
On the 30th day of March, 1948, plaintiff filed certain interrogatories, the principal one in controversy here being: "2. Enumerate and list the ingredients, organic and inorganic, and proportions used thereof, in the soap, washing compound, or detergent, known as `Dishwashing Compound No. 2', as manufactured and sold by the DuBois Company in 1941 and 1942."
Objection was made to the interrogatories and was overruled as to the one above set forth. An answer to the interrogatories was then filed which listed nine classes of detergents as printed in Public Health Reports, Vol. 59, No. 34 of August 25, 1944, pages 1103-1117, which was also issued by the U. S. Public Health Service as Reprint No. 2574, but it does not state whether all or only part of those listed were used, except it did exclude sodium hydroxide (lye) neither did defendant state the porportions of the ingredients used in the preparation of the compound except it stated that it also used less than 1/25 of 1% of a common flouresceine type soap dye.
On the 3d day of May, 1948, plaintiff filed a motion to compel further answers to the above quoted interrogatory, which motion was sustained. The defendant then filed a motion praying the court to reconsider its order, which motion was as follows:
"As grounds for this Motion the defendant respectfully draws the Court's attention of the fact that the deposition of the plaintiff in this case has been taken and is on file in the office of the Circuit Clerk of Greene County, and that the evidence of the plaintiff so given does not show that the product above mentioned, manufactured by this defendant, was used by the plaintiff or that the injury she complained of resulted from the use of said compound.
"Defendant further states that the compliance with the order of May 29th requires this defendant to divulge a highly valuable trade secret with resultant irreparable damage to this defendant.
"Wherefore, defendant prays the Court to re-consider its order and to either withdraw same or to postpone or suspend the enforcement of such order until the plaintiff has made a prima facie case as to the use by the plaintiff of the defendant's compound as set out in her petition."
This motion to reconsider was overruled on the 12th day of June, 1948, and the defendant was given additional time to answer the interrogatories.
On the 3d day of July, 1948, defendant filed an affidavit of its Secretary and Treasurer, which contained the following language:
"Affiant states that the defendant, at the present time and for several years last past, has been engaged in the manufacture and sale of a product known as Dishwashing Compound No. 2; that the formula of ingredients and proportions used in the manufacture of said compound now and in the past has been preserved and kept secret in order to avoid its exploitation by competitors of the defendant.
"The said Dishwashing Compound No. 2 has been widely sold throughout the United States of America and said product has not proved injurious to any person or persons who have used it throughout the years.
"Said Dishwashing Compound No. 2 is not injurious to the skin.
"The evidence contained in a deposition of the plaintiff, taken by the defendant and now filed in this cause establishes without question that whatever affliction, if any, *739 was suffered by the plaintiff, did not result directly or indirectly from her use of the defendant's product.
"Affiant understands that the court in this cause has ordered the defendant specifically to answer the question above enumerated. Affiant states that a compliance with such order will cause unnecessary and irreparable injury to this defendant, in that the latter will be required to divulge a highly valuable trade secret the property of the defendant, in an action in which said defendant's product was not used by the plaintiff.
"Wherefore, affiant prays the court to reconsider the former order and grant one or two of the following alternatives:
"1. Withdraw the order requiring a more specific answer to the above question, than has heretofore been given.
"2. Postpone or suspend the enforcement of such order until the plaintiff has made out a prima facie case as to all other issues alleged in the petition."
This affidavit was stricken from the files as showing a wilful disregard of the court's order. Plaintiff then filed a motion for a default judgment pursuant to Section 847.89, (b) (3), Pocket Part, Missouri Revised Statutes Annotated (Laws of Missouri, 1943, page 381, Section 89(b) (3)) that section provides (among other things) that if a party to a cause refuses to answer interrogatories the court may "enter a default judgment against that party." When this hearing was had, the following transpired:
"Mr. Woolsey: The defendant requests that the record show that on the 19th day of June, when both parties were present before the Court, the defendant further requested that it be allowed to divulge the formula in question to the Court personally, to be held by the Court in confidence until such time as the plaintiff had made a prima facie case against the defendant, at which time, if a prima facie case was made, the formula was to be disclosed to the plaintiff and her attorneys, and that said request was overruled by the Court.
"The Court: Said offer was made in open Court with the attorneys for both sides present, and the offer was rejected by the Court at the suggestion of the plaintiff's attorney.
"Mr. Woolsey: The defendant further requests the Court to make the deposition the deposition of the plaintiff now on file with the official records of the Court in regard to this case with the Circuit Clerk of Greene County, Missourifor the reason that the plaintiff's deposition does not make a prima facie case against the defendant, it is requested that this deposition be allowed and made a part of the record at this time, in order to show that the defendant's request for a reconsideration of the original order concerning the interrogatories answered was made in good faith and is based on sworn testimony of the plaintiff, under oath, taken with opportunity for cross examination by her counsel.
"Mr. Sanford: We object to that being introduced into evidence for the reason that no evidence of any sort has been offered in this case, except that pertaining to the jurisdiction of the parties; that trial has not been had, but this is a judgment on the pleading; that defendant, in its own answers to the interrogatories that it did answer, admitted sale of this merchandise to the company for which the plaintiff was working, sale having been made approximately about the time that the matters occurred that are alleged in plaintiff's petition."
Answers to other interrogatories admitted defendant had made the following shipments of the washing compound to Heer's Inc. (plaintiff's employer),
"February, 1941, 5 cases, 325 pounds.
"September, 1941, 4 cases, 260 pounds.
"November, 1941, 8 cases, 560 pounds. * * *
"Mr. Woolsey: Are you through?
"Mr. Sanford: Yes, sir.
"Mr. Woolsey: With the Court's permission, I would like to further add that this request that the deposition be made a part of the record results from the indication *740 on the part of the Court that the motion for default judgment will be sustained, and that in order for an appellate court to have all relevant and material facts upon this question, which appears to be one of first impression in Missouri; that the deposition should be on hand for the appellate court's perusal in connection with the question of whether or not the prima facie case is made, and whether or not a defendant should be required, under the law, to divulge a secret formula until such prima facie case is made.
"The Court: Plaintiff's objection will be overruled, and the deposition will be considered as in the record for purposes of appeal."
The court then heard testimony of the plaintiff and her husband as to the amount of the damages. An agreement was also had and it was stipulated between the parties what the evidence of Dr. Garrett Hogg, Dr. L. F. Heimburger and Dr. T. E. Ferrell, who had examined plaintiff would be if they were present and testified and it was stipulated that there was no testimony by these doctors on the question of the cause of the condition of plaintiff's hands. At the close of the testimony as to the damages, the court rendered a default judgment against the defendant in the sum of $2,000. That judgment is:
"Now on this 24th day of July, 1948, this matter coming on to be further heard on Plaintiff's Motion for Default Judgment, and the Plaintiff appearing in person and by her attorneys of record herein, and the Defendant appearing herein by its attorneys of record.
"The Court hears the Motion and finding that said Motion was heretofore first presented and argued on the 12th day of July, 1948, at which time the hearing was adjourned to this date; and finding that said Motion is well taken and that Defendant has refused and neglected to answer Plaintiff's interrogatory propounded to it, which reads as follows, to-wit: `Enumerate and list the ingredients, organic and inorganic, and proportions used thereof, in the soap, washing compound, or detergent, known as "Dishwashing Compound No. 2", as manufactured and sold by the DuBois Company in 1941 and 1942.'
"And finding that the Defendant and its officer and agent has failed and refused to answer said interrogatory though heretofore ordered by the Court to do so, and that Plaintiff's Motion for Default Judgment is moot and proper and should be sustained, same is ordered and sustained.
"Whereupon both parties hereto, Plaintiff and Defendant, introduced evidence as to the nature, character, and extent of Plaintiff's injuries and damage, and the Court being fully advised in the premises finds that Plaintiff was injured and damaged to the extent of Two Thousand and No/100 Dollars ($2,000.00).
"Wherefore, it is ordered, adjudged, and decreed that Plaintiff have and recover of and from the Defendant the sum of Two Thousand and No/100 Dollars ($2,000.00), together with her costs herein laid out and expended, for which execution may issue."
On August 2, 1948, defendant filed a motion to set this judgment aside and grant a new trial, which was by the court overruled.
When a default judgment is rendered in a tort action, and where the damages are unliquidated, the court may take as true the allegations of the petition, Fawkes v. National Refining Co., 341 Mo. 630, 108 S.W.2d 7; Electrolytic Chlorine Co. v. Wallace & Tiernan Co., 328 Mo. 782, 41 S.W.2d 1049, 78 A.L.R. 930; Evans v. Dockins, Mo.App., 40 S.W.2d 508; Oliver v. Scott, Mo.App., 208 S.W.2d 468, but there is no admission of the damages claimed. That must be proved. Lewis v. Lewis, Mo.App., 207 S.W.2d 524.
Appellant contends that the plaintiff's deposition taken on the 9th day of March, 1948, and the stipulation as to the testimony of the physicians does not make a prima facie case of liability against the defendant and that it ought not be required to divulge the proportions of the mixture until a prima facie case is made. It is true that the deposition of plaintiff and the admitted testimony of the physicians relate principally to the injuries suffered by *741 plaintiff. There is no proof therein of a causal connection between the injury and the product sold by the defendant to plaintiff's employer. But we cannot assume that that would have been all the evidence that plaintiff would produce on a trial. The defendant admitted certain shipments of the washing compound to Heer's Inc., near the time plaintiff was employed there. The plaintiff testified that the washing compound she used, and to the use of which she attributed her injury, was procured by employees of the lunch counter at which she worked, from the Tea Room operated in another part of her employer's department store. It would seem logical to assume that proof could be obtained that the washing powder delivered to Heer's Inc., was used in the Tea Room and part of it taken down to the lunch counter for use there, if such were the facts. The plaintiff's testimony shows that her hands and wrists became infected over the same surface that came in contact with the water containing the washing compound a short time after she began using it. She continued to wash the dishes in the water in which the compound had been used and her infection became progressively worse. Other than the inference to be drawn from these circumstances, she does not know what caused her trouble. It seems to us, therefore, that she would not only be entitled to know what chemicals were included in the compound but also the proportionate part of each chemical, if for no other reason, so those facts could be submitted with the others in a hypothetical question to experts for their opinion as to whether the chemicals so compounded caused the results that followed. It is as important for her to know the different amounts of the chemicals and substances used as to know what the chemicals were that were compounded, insomuch as she has none of the compound for chemical analysis. To keep from her this information would prevent her from making a prima facie case and it would do no good to divulge it secretly to the judge or to the plaintiff after the trial had proceeded and she had failed to prove a causal connection between her injury and the washing compound that she claims caused it.
We know of no law that prevents a court from compelling the divulging of a trade secret under circumstances where it is as material as here in ascertaining the facts.
Professor Wigmore reviews this question, Wigmore on Evidence, Vol. VIII, Sec. 2212, Page 157, and says in discussing the withholding of such information:
"* * * in such cases, it might amount practically to a legal sanction of the wrong if the Court conceded to the alleged wrongdoer the privilege of keeping his doings secret from judicial investigation. No privilege at all should there be conceded, although as much privacy as possible might be preserved by compelling disclosure no farther than to the judge himself, or to his delegated master or auditor, if (as is usual) the cause is tried by chancery procedure. Finally, even where the claimant of the privilege is not a party charged with fraud, no privilege of secrecy should be recognized if the rights of possibly innocent persons depend essentially or chiefly, for their ascertainment, upon the disclosure in question.
"* * * What the state of the law actually is would be difficult to formulate precisely. It is clear that no absolute privilege for trade secrets is recognized."
In Coca-Cola Co. v. Joseph C. Wirthman Drug Co., 8 Cir., 48 F.2d 743, 748, in discussing the right to withhold such information, Judge Stone, speaking for the court said: "Except where there is some announced reason of public policy such as incrimination or privileged communicationthe rules of evidence have never bent to permit a party to a suit to refrain from divulging facts pertinent to the issues before the court simply because he might be injured by such facts becoming public. In saying this, we do not wish to be understood as meaning that under any and all circumstances, where secret trade formulas or trade secrets might have a bearing upon issues before a court, they must be revealed. As far as is consistent *742 with a fair administration of justice, such secrets should be protected. But where such hold the essential facts of a controversy and no equally good evidence is obtainable, we see no reason why they should not be required."
The interesting discussion in Lever Bros. Co. v. Proctor & Gamble, D.C., 38 F.Supp. 680 is not inconsistent with our conclusions in this case. See also Charles of the Ritz Distributors Corp. v. Federal Trade Comm., 2 Cir., 143 F.2d 676.
The appellant, in its brief, cites Lenerts et al. v. Rapidol Distributing Corp., D.C., 3 F.R.D. 42; Wiggins Chemical Co. v. Berry, 7 Cir., 46 F.2d 622 and an article by Professor Wigmore in 26 Illinois Law Review, p. 564.
The Lenerts case was by the District Court of the Northern Division of New York. In that case, the court held that it was improper to require the defendant to reveal a secret formula or a trade secret but could be compelled to reveal the ingredients of the product. It based its decision on Rule 30(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. That section, among other things, permits the court in which an action is pending, after a notice to take a deposition by oral examination, to make an order that it may be taken only on written interrogatories and that secret processes, developments or research need not be disclosed.
We have no such provision in our statutes and if we did, the mere divulging of the ingredients of a compound and the proportionate part of each compounded would not, in our opinion, be divulging a secret process.
The case of Wiggins Chemical Company merely states that in the trial the appellant refused to make its formula public by introducing it into the record but it did submit the formula to the District Court for its confidential examination and inspection. However, this was an equity case and under its facts, this procedure could have been safely followed. The District Court found against the appellant, on the facts that the formula did not appear in the record and the Court of Appeals held that under this state of facts, they could not say that the trial court erred in its finding.
The article by Judge Wigmore in 26 Illinois Law Review is based upon the Coca Cola case, supra, which was an equity case tried by the court alone and was decided against the Coca Cola Company, because they would not divulge the proportionate mixture of the ingredients of Coca Cola. They did divulge the ingredients. Judge Wigmore suggested that they could have divulged proportionate parts of the mixture in confidence to the court and he in turn submitted it confidentially to the Court of Appeals and the case could have been decided without publicizing the proportion of the mixture. They did not do this, the District Court held against them and it was affirmed by the Court of Appeals.
We think whether appellant should have been compelled to reveal the proportionate parts of the ingredients in its soap powder, was a matter within the sound discretion of the learned trial court and we are not justified from the facts here in holding that he abused it.
Defendant also contends the damages allowed by the court are excessive. Plaintiff's testimony shows that after several weeks of using the washing powder, her hands and wrists became so infected that she was compelled to quit working and seek medical assistance. To one doctor she paid $7, to another she paid $70 at $2 per trip and to a third doctor $50 for X-Ray treatments in trying to get relief from her infection. She went regularly to doctors for about two months. For nine months she was unable to work except for approximately two weeks. Her fingers had to be wrapped individually and over that her hands were bandaged so it was impossible for her to do any work, including her housework. She testified that her hands were aching and itching constantly and made her nervous. Some effects of the infection (discoloration) were noticeable at the trial though she had recovered *743 the use of her hands. Her weekly salary, while working at Heer's was $14. Considering all these facts, we cannot say as a matter of law that the amount of damages allowed by the court was so unreasonable as to require a reversal. The judgment of the trial court should be affirmed. It is so ordered.
McDOWELL, J., concurs.
BLAIR, J., concurs in separate opinion.
BLAIR, Judge.
I concur fully in the holding of the main opinion, that the damages assessed were not excessive.
I am unable to see where appellant was justified, under Section 85 of the Laws of Missouri for 1943, page 379, Mo.R.S.A. § 847.85, in refusing to answer in open court the interrogatories of respondent as to the proportions, as well as the ingredients, used by it in its "Dish Washing Compound No. 2."
Respondent made a prima facie case against appellant by her testimony that the injuries sustained by her could not likely have been due to some other cause than her constant use in her work of appellant's "Dish Washing Compound No. 2," and it seems to me that it was then up to appellant to show (if it could) that such injuries were due to some other cause.
The default judgment was justified by subsection (d) of Section 89 of the Laws of Missouri for 1943, at page 382, Mo.R.S. A. § 847.89(d).
It is rather a severe proceeding to compel appellant to reveal to the World and to its competitors, not only the ingredients used by it in its Dish Washing Compound No. 2, but also the proportions of such ingredients; but such is apparently the plain meaning of Section 85, Laws of Missouri, 1943, page 379, Mo.R.S.A. § 847.85, and it is the duty of this Court to enforce the law, as laid down by the Legislature, even though such law may seem harsh to us.
Under such circumstances, it is my duty to concur.