KNOX et al. v. LONG et al.

No. 6616.

Court of Civil Appeals of Texas. Texarkana.

April 10, 1952.

Rehearing Denied Sept. 25, 1952.
Further Motion for Rehearing Denied
Oct. 23, 1952.

Hurst & Burke, L. F. Burke, Longview, Fulton & Hancock, Edwin M. Fulton, Gilmer, Dan Moody, Austin, for appellants.

Wynne & Wynne, William A. McKenzie, Dallas, Harrington & Harrington, Longview, Grimes & Grimes, Washington, N. C., for appellees.

WILLIAMS, Justice.

This action under plaintiffs' allegations is to enforce a parol trust. W. C. Knox and Harryett H. Knox who were married in 1928, located in Longview in the early days of the discovery of the East Texas oil field, and thence until his death on December 6, 1945, resided in and near Longview and Dallas, Texas. During the period the two actively engaged in the oil business, namely, the purchase and sale of minerals and mineral leasehold estates along with the development of leasehold estates into oil producing properties. At the time of his death the record title of various mineral and leasehold estates together with other realty acquired subsequent to 1930 stood in the name of Mrs. Knox, his surviving wife, or in the names of her children by her former marriage, namely, W. C. Holcomb, Joe B. Holcomb, Genia E. Williams or the latter's husband, J. H. Williams. No record title to any realty stood in the name of W. C. Knox or in the name of Betty Knox Long, his daughter by a former marriage, his only child.

Dr. J. T. Hagan, as administrator, together with Betty Knox Long joined by her husband instituted this suit in the form of a statutory trespass to try title action on June 7, 1947. She later superseded Dr. Hagan as administrator, and in December, 1948, individually and as administratrix, joined by her husband filed an amended petition. In the amended petition, in which the same Mrs. Knox and above named children and son-in-law, and certain oil

companies were named defendants, and in which the same properties were enumerated as before, the suit became one for the recovery of an undivided one-half interest in the various real and personal properties situated in Gregg, Upshur, Wood and Dallas counties, on the theory that said properties were acquired by the community efforts and funds of W. C. Knox and Mrs. Knox, and conveyed to the defendants for convenience, who were holding the same in trust for the community estate.

On March 28, 1951, a jury was impaneled and the cause proceeded to trial. In the course of the trial, plaintiffs on March 30 announced their nonsuit as against certain oil companies and defendants W. C. Holcomb, Joe B. Holcomb, G. W. Williams and J. H. Williams as to a seven-acre leasehold estate and lease house situated thereon; a .45-acre leasehold estate; a 40-acre leasehold estate; a 3-acre leasehold estate; and the one-fourth oil and gas royalty interest in Lot No. 9 of the Reese Addition to the town of Hawkins, Texas; all of which are fully described in the pleadings and' the nonsuit decree.

At the close of all the evidence, the court pronounced judgment for plaintiffs against defendant Mrs. Knox for one-half interest in and to the $7/8$ oil and gas leasehold estate and all personal property located upon lots 9 and 10 of the Reese Addition to the town of Hawkins, Texas; and an undivided one-fourth interest in the oil and gas royalty under Lot No. 10 of this addition. Plaintiffs were further awarded a recovery against the Humble Oil & Refining Company for approximately $49,000 on its answer, being the value of one-half interest in oil runs that had been impounded during the pendency of this suit. Upon its tender and payment into the court, the company was to be discharged from further liability. Above part of the judgment is grounded on the alleged failure and refusal of Mrs. Knox to produce exhibits and to submit to oral examination by counsel theretofore ordered by the court.

Pursuant to favorable jury findings for the plaintiffs as to the acquisition of the residence situated at 7038 Lakewood Boulevard, in Dallas, Texas, plaintiffs were further awarded a recovery against W. C. Holcomb and Mrs. Knox of an undivided one-half interest in and to the residence and lot together with the same interest in the household effects, equipment, pictures, rugs and other personal property therein situated. Mrs. Knox and her son W. C. Holcomb are appellants, and above-named plaintiffs are appellees.

On August 8, 1950, an order was entered in the civil minutes of the 124th District Court of Gregg County, which reads in part, "Came on to be heard the above styled and numbered causes, and said causes were dismissed from the docket of said court for failure of the parties to prosecute same." "It is therefore ordered and decreed by the court that the * * * styled, and numbered causes be dismissed from the docket * * * on the court's own motion for reasons above stated." This order listed 182 cases, giving number and style of each case, which included, "No. 20,688-B, Betty Knox et al. v. Harryett Knox et al.", the case at bar. The term of court in which above dismissal judgment was rendered expired September 2, 1950. On September 15, 1950, after the expiration of above term, appellees filed their motion to reinstate this cause, alleging that the inclusion of this case among the list of above 182 cases was a mistake. The same day after an ex parte hearing without notice to appellants, the trial judge entered an order vacating above decree of dismissal and reinstated this cause on the docket. Thereafter, on September 20, 1950, a hearing was held on above motion to reinstate this cause, in which the respective litigants participated. This hearing resulted in another order vacating the dismissal order and reinstating the cause.

Appellants assert under their first two points that the trial court was without jurisdiction to reinstate the cause after the expiration of the former term of court except by bill of review and above-mentioned order reinstating the cause on the docket was a nullity.

Shortly after Hon. Fred Erisman had succeeded the Hon. Earl Roberts as judge of the court, in a move to clear from the docket dormant cases then pending the dis-

trict clerk placed on the court's desk 182 docket sheets representing that number of cases that had been segregated for "dismissal for want of prosecution." Such dismissal order stamped on each sheet called for date and signature which the court signed. The court discovered with the assistance of Miss Stewart, the district clerk, on a re-check of the docket sheets and before their return to the clerk's office that the "Green" case which was included in the list was then set for trial for September 11, 1950, and was also informed by the clerk that the present case was in the Court of Civil Appeals. "Those two cases were taken out of the stack and were laid aside not to be dismissed." "Sometime thereafter, the whole group of sheets were taken into the Clerk's office and in Miss Stewart's absence and in my absence, they were entered by a new deputy." The trial judge further testified, "It was not my intention to dismiss the present case nor the Green case; both of which I had knowledge was actively pending on the docket." "I meant to leave them on the docket." The order which reinstated the cause after a hearing recites "That the inclusion of this suit in the blanket order of dismissal entered on August 8, 1950, was erroneously included * * * that the inclusion of such case by number and style was erroneous, a clerical mistake and misrecital within a decree or order of the court and was never intended to be dismissed, and should be now corrected."

■ In support of their attack upon the validity of such order, appellants cite Love v. State Bank & Trust Co., 126 Tex. 591, 90 S.W.2d 819; First National Bank v. Fox, 121 Tex. 7, 39 S.W.2d 1085; Eskridge & Williams v. Merchants State Bank & Trust Co., Tex.Civ.App., 173 S.W.2d 518; and Acosta v. Realty Trust Co., Tex.Civ. App., 111 S.W.2d 777. These decisions would control the disposition of above points as urged by appellants if a judicial mistake were involved. However, all the facts and circumstances above set out, being without dispute in the record, forces the inescapable conclusion that the entry of the dismissal order was the result of a clerical or manual mistake made in the clerk's office, contrary to the court's instruction and intention. Being a clerical error, the court was clothed with the legal authority after the hearing on the motion, to enter the reinstatement order of September 20, 1950. Applicable here, it is reannounced in Collins v. Davenport, Tex.Civ. App., 192 S.W.2d 291, 294, that "It is the established law in this state that while the trial court may not, after the term of court at which a judgment was rendered, correct what is termed a judicial error, 'the power of a court to correct inadvertent judgment entries or irregularities * * * is derived from the Constitution which creates the court', and is not dependent upon legislative authority", citing Chambers v. Hodges, 3 Tex. 517; 25 Tex.Jur., p. 530, par. 135. See also the other authorities cited in the opinion, and rules 316 and 317, Texas Rules of Civil Procedure, applicable to this legal power. The attack upon this reinstatement order is overruled.

■ Appellants assert that the trial court "acted in an arbitrary and capricious manner in depriving Mrs. Knox of the right to present her defenses and grounds for relief in this cause and in rendering judgment against her as a defaulting defendant" and "in holding that she had not shown good cause for her failure to appear because the evidence conclusively established that she was unable to appear on account of her physical and mental illness."

This extensive record deals in large part with the efforts to take the oral depositions of Mrs. Knox. As stated in appellants' brief, this record "is cluttered with applications and notices of appellees to take oral depositions of Mrs. Knox, * * *." As early as March 31, 1949, the Honorable Earl Roberts, then judge of the court, ordered Mrs. Knox to appear in the court room on April 11, for examination as in ordinary trials and to produce originals of certain instruments. He found "that numerous efforts have been made to take her oral depositions, but it has been impossible to serve her." Upon her failure to appear, the Hon. Earl Roberts set the hearing over until May 16, at which time her counsel presented a telegram from a Dallas physician in which he stated she could appear

within 30 days. Appellees then filed a motion for an order to take her depositions in Dallas on any date the court might fix.

About this time a pending motion to disqualify certain attorneys was heard and denied from which appellants perfected an appeal. Until the disposition of this appeal, reported in Knox v. Long, Tex.Civ. App., 228 S.W.2d 367, and the return of the mandate in May, 1950, no efforts to take her depositions were made. Service was timely had to take her depositions on September 14, pursuant to appellees' application filed August 16, to take same. She ignored this notice due to the dismissal order of August 8, 1950. Efforts were made to take her deposition in October, November and December. On a hearing held February 5, 1951, the Honorable Fred Erisman, then judge of said court, ordered her to appear at Longview on February 10, for examination as in ordinary trials and to produce certain books and papers. On February 10 the hearing was recessed until the 16th grounded on a doctor's certificate that she was unable to attend. Then on March 19, 1951, after litigants had joined issues on a motion of appellees to take away her defense because of failure to give her oral deposition and after an extensive hearing on her alleged physical disabilities and the various efforts theretofore made to take her oral depositions, the court found that appellees had used due diligence in their endeavors to take her oral deposition but had failed to get her to appear and answer depositions or to appear before the court; that she had failed and refused to appear in Gregg or Dallas County; that she was physically and mentally able to do so. She was then ordered to appear on March 24, 1951, for such purpose in either Dallas or Gregg County at her choice. The court concluded this order, to-wit: "and upon her failure to appear before the court and give such deposition she shall be in default under Rule 202, T.R.C.P." Failing to appear on March 24, 1951, the court decreed that she was in default and "had refused without cause and had flouted the orders and judgment of the court and that she thereupon be deprived of the right to present her grounds for defense or relief."

There is evidence to the effect that she secreted herself during above period; absented herself from Longview where she had maintained a home as well as in Dallas, and that appellees' counsel had employed an officer to disguise himself as a mechanic to gain entrance into the home to obtain service of notices to take depositions. In their defense to the failure of Mrs. Knox to appear and give her testimony prior to Judge Roberts' order of March 31, 1949, appellants assert that the places set to take her depositions were more than 100 miles from Longview and unauthorized under Rule 201; and that her failure to appear before the Honorable Earl Roberts was due to illness. They asserted in the trial court and here contend that the reinstatement orders entered in September, 1950, were void and the court was without jurisdiction and because of this and the alleged illness of Mrs. Knox she did not appear in response to the subsequent orders above enumerated. It is not necessary here to detail the medical testimony pro and con as to her physical or mental condition for such testimony presented a question of fact. Without further details of the evidence in support of the court's action, the record reflects patience of the trial court and supports the conclusions that Mrs. Knox had flouted the efforts to obtain her oral depositions. This attack upon the court's action is respectfully overruled.

Subject to the plea to the jurisdiction of the trial court because of the dismissal order, hereinabove discussed, appellants reassert here that the trial court was without legal authority to deprive her of the defenses urged in her pleadings because the penalty provision in Rule 202, supra, is unconstitutional and violative of the Fifth and Fourteenth Amendments to the United States Constitution and of Sec. 19, Art. 1 of our Texas Constitution, Vernon's Ann.St., and the Supreme Court of Texas was without legal power to promulgate and enact such penalty provision of said rule under House Bill No. 108 of the Act of the 46th Legislature, Vernon's Ann.Civ.St. art. 1731a. Rule 202, supra, with its penalty provision shown in italics, reads as follows:

"Rule 202. Request for Issuance. Upon the application of any party to a suit who desires to take the oral deposition of a witness, the clerk of the court in which the cause is pending shall immediately issue a commission to take the deposition, fixing the time and place for the taking of the testimony as set out in the application. The officer authorized to take the deposition and to whom the commission is delivered shall immediately issue and cause to be served upon the witness a subpoena directing him to appear before said officer at the time and place, in the county of the residence of the witness, named in the commission for the purpose of giving his deposition; provided that where the witness is a party to the suit with an attorney of record, service of the subpoena in such case may be made upon the attorney representing the witness, *and if the witness fails to appear in answer to the subpoena, except for good cause shown, such party shall not be permitted to present his grounds for relief or his defenses.* The deposition shall not be taken until the opposite party, or his attorney of record, has had the ten days' notice provided for in Rule 200. As amended by order of August 18, 1947, effective Dec. 31, 1947; and by order of Oct. 12, 1949, effective March 1, 1950."

Above penalty provision of this rule, taken from Federal Rules of Civil Procedure, 28 U.S.C.A., has been uniformly approved by our courts, and this point is overruled. Sgitcovich v. Sgitcovich, Tex. Sup., 241 S.W.2d 142; Collins v. Wayland, 9 Cir., 139 F.2d 677; Hammond Packing Co. v. State of Arkansas, 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530; Putney v. Dubois, 240 Mo.App. 1075, 226 S.W.2d 737, 17 A.L.R.2d 375.

▇ Mrs. Knox next contends that in the event the court's action in depriving her of her defenses be upheld that nevertheless this judgment against her based thereon is erroneous because appellees failed "to establish by any evidence whatever, any right or title in any of the property recovered against her." This is overruled. As hereinbefore noted the trial consumed three days. The evidence dealt with the acquisition of the Hawkins lots, and the Dallas home and its contents. The evidence also dealt with the acquisition of the other mineral and leasehold mineral interests acquired during the period, that were involved in the nonsuit. Excerpts from the petition of W. C. Knox in his action for divorce against Mrs. Knox and from pleadings in other civil actions in which W. C. Knox and his wife were either plaintiffs or defendants were introduced. Such excerpts were in effect that the respective properties were owned by the two. As to the Hawkins properties, she and her husband obtained the permit to drill on such lots; executed drilling contract; and reported the proceeds from oil produced therefrom as community income in their income tax returns. Both actively and mutually engaged in the operations here involved. They were both resident citizens of Texas during the period. The judgment for a board bill in the early days of their activities in the oil business would reflect meager funds at the start of their campaign in Texas. The discussion of other points that follow reflects further light on the character of their joint operations.

▇ The motions of Mrs. Knox and her children to disqualify Angus G. Wynne, H. M. Harrington, Jr., and their respective law firms from prosecuting this suit and to require their withdrawal were denied on August 2, 1949, by the Honorable Earl Roberts, then judge. After an exhaustive hearing, the court concluded, as recited in this August, 1949, decree that neither attorney nor their law firms were in any manner disqualified to represent appellees in the suit. An appeal from above order was dismissed by this court for the reason that such was an interlocutory order. See Tex. Civ.App., 228 S.W.2d 367. Prejudicial error is reasserted in above refusal to disqualify above attorneys. The motions to disqualify; answers to same; the decree which denied the motions; and the disposition by this court on the appeal are incorporated in the record on the instant appeal. Appellants' motion to file the state-

ment of facts, a large volume as duly approved, certified and timely filed in the former appeal · is granted. No additional evidence on the motion to disqualify was offered or introduced. As we construe this record this court is being called upon to review the former action of the Honorable Earl Roberts after the action has been 'tried on its merits. The respective litigants have briefed the point on the record as formerly made but that of appellees is subject to our action on appellants' motion to file the former statement of facts.

The evidence heard on the motions to disqualify reflects that the realty interests mentioned in the nonsuit and the realty embraced in the instant judgment other than the Lakewood residence, have been the subject of previous litigation in which W. C. Knox, Mrs. Knox and her children, either as plaintiffs, movants or defendants, jointly or severally, were litigants and in which appellees' lawyers as well as many other lawyers over East Texas have represented them. The previous litigation, with one exception later herein mentioned, in which the lawyers under attack have appeared, involved issues between outsiders and members of the Knox family. The hearings before the Railroad Commission and the procedure pursued subsequent thereto to obtain drilling permits in which acreage of certain leasehold estates were revamped reflect a family cooperative affair. The evidence, though not without some conflict, will support the implied findings of the trial court that W. C. Knox and Mrs. Knox employed and counselled with these attorneys or paid them for such legal services which they rendered for them or her children. In July 1943, Wynne and Wynne as attorneys for W. C. Knox filed a suit against Mrs. Knox in which her children and son-in-law were also named as defendants. In this action, which was later dismissed, W. C. Knox prayed for a divorce and for one-half interest in the properties therein described as community property based on the allegations therein made.

As stated in 5 Am.Jur., pp. 297, 298, "The test of inconsistency is whether acceptance of the new retainer will require the attorney to do anything which will injuriously affect his first client in any matter in which he represents him, and also whether he will be called upon, in his new relation, to use against his first client any knowledge or information acquired through their connection." Continuing at page 298, the rule is stated: "The general rule above does not, however, prevent an attorney from representing a subsequent client against a former client, where the duties required of him do not conflict with those required in the first employment." See also 5 T.J., pp. 431 to 433. The position of these attorneys is illustrated by the decision in Ellerd v. Randolph, Tex.Civ.App., 138 S.W. 1171. It is to be implied from the trial court's decree that the attorneys were not disqualified, that the court found from the evidence that there were no conflicts between their prior position when they represented W. C. Knox and his wife in behalf of the community and their present position wherein they represent the daughter of W. C. Knox, individually in her claim to one-half of the community estate. As stated in Ramirez v. Vela, Tex.Civ.App., 102 S.W.2d 447, 449, applicable here, "The issue raised by the motion was heard and determined by the trial judge, upon the evidence of several witnesses. It is unnecessary to set out that evidence here. The issue turned out to be purely one of fact, and the trial judge resolved it against appellant, in the exercise of a discretion peculiarly his. We cannot say from the record that the court abused that discretion. Appellant's first proposition is accordingly overruled."

■ The observations which follow deal with that portion of the judgment which decreed under the principles of a resulting trust that W. C. Knox and wife held the beneficial interest, as their community, in and to the Lakewood residence, the record legal title then being lodged in appellant W. C. Holcomb. In response to special issues the jury found that: (1) "Funds or property" belonging to W. C. Knox and Harryett Knox were used by W. C. Knox for the purchase of the residence at 7038 Lakewood Boulevard; (2) that 80% of the purchase price was paid by funds and property of W. C. and Harryett Knox; (3) that W. C. Holcomb took the

title to this piece of property for the benefit of W. C. Knox and Harryett Knox; and (4) that W. C. Knox did not cause this conveyance to be made to W. C. Holcomb for the purpose of hindering, delaying and defrauding his creditors. Under various points, appellant Holcomb attacks the sufficiency of the evidence to support above findings, and if left undisturbed that the same are insufficient to invoke the application of the principles of a resulting trust. The points are so closely interrelated they will be discussed as a group.

Appellants state that the evidence is conclusive that W. C. Knox caused Parks, the grantor, to execute the deed which under its terms conveyed to W. C. Holcomb in December, 1933 the Lakewood residence together with the furniture and furnishings therein, and that "this deed in all its terms was prepared at the request of W. C. Knox"; and "such transaction in its entirety was wholly of the design of W. C. Knox." If Mrs. Knox is added to above, we are in complete accord. The evidence reflects that Mrs. Knox was a persuasive influence in having the deed made into W. C. Holcomb, her son. After the agent had agreed with Mr. and Mrs. Knox on the terms of the sale and after the agent had prepared the deed into Mr. and Mrs. Knox, the two returned to his office and then requested that W. C. Holcomb be named as grantee in the deed, "for personal reasons." Upon his inquiry as to who W. C. Holcomb might be, and being informed that he was a young man, single, and then a student in college, this agent demanded additional security to the vendor's lien note to be executed in part payment for the place. After they reached an agreement as to additional security, the deed was redrawn into W. C. Holcomb. A $12,500 second lien note which represented the down payment was executed by W. C. Knox, Mrs. Knox and W. C. Holcomb. W. C. Knox then assigned and pledged an oil payment payable to him as additional security. This oil payment later proved to be worthless. Later W. C. Knox, payee of another oil payment, assigned same to Parks, the payee of the second lien note, in full satisfaction of said note, and the vendor's lien note in turn was as-

signed to Mrs. Knox "for her separate estate." The first lien in the sum of $11,200 held by an insurance company, which was renewed by W. C. Knox, Mrs. Knox and W. C. Holcomb in 1935 and 1940 has been paid. The record discloses various letters, telegrams and personal calls by W. C. Knox and Mrs. Knox on the holder of the first lien note, their partial payments and request for time in nursing along the liquidation of this note. After this residence was acquired, W. C. Knox and Mrs. Knox refurnished it with carpets, furniture, and other decorations and have resided therein as their home. They held the property out as being "theirs" or "their home." W. C. Holcomb, who later married, resides in Gregg County. Certain evidence deals with the alleged shrewdness of Mrs. Knox and the alleged physical and mental disabilities of W. C. Knox, the result of a debilitating disease that caused his death.

Appellant Holcomb testified, "I had no agreement to hold this home in trust for anybody * * * but agreed with them (Mr. and Mrs. Knox) that if they would help me pay for the property they could live in it as long as they lived," and he paid part on it and they paid part on it; "I purchased the (Dallas) property. * * * I claim to own it." The findings of the jury which settled such issues of fact that may have been raised by the testimony of appellant Holcomb set out above is sustained. 3 T.J. (Appeal and Error), Sec. 745.

Appellant Holcomb is in no position to urge as a defense that the conveyance into him was made for the purpose of hindering and defrauding creditors. Gray v. Mills, Tex.Civ.App., 206 S.W.2d 278, 281. He claims to have purchased the property. There were no outstanding debts against him. It was unnecessary for Mr. and Mrs. Knox to resort to this conveyance to avoid creditors. They could have taken legal title to this Lakewood residence in their own name as their homestead. And as such, this property would have been beyond the reach of his creditors. Swayne v. Chase, 88 Tex. 218, 30 S.W. 1049, 1050; National Liberty Ins. Co. v. Merkur, D.C., 29 F.Supp. 280; Bell v. Beazley, 18 Tex.

Civ.App. 639, 45 S.W. 401, 403; 20 Tex. Jur., pp. 403, 462.

Above jury findings sustain the decree that the beneficial interest or equitable title in and to the Lakewood residence rested in the community estate of W. C. Knox and his wife, grounded on the principles of a resulting trust. Morrison v. Farmer, 147 Tex. 122, 213 S.W.2d 813; Gowan v. Reimers, Tex.Civ.App., 220 S.W.2d 331; Gray v. Mills, Tex.Civ.App., 206 S.W.2d 278; Mills v. Gray, 147 Tex. 33, 210 S.W. 2d 985; Davis v. Pearce, Tex.Civ.App., 205 S.W.2d 653. "Resulting trusts always involve the operation of the doctrine of equitable consideration as basic to the implication or presumption in law of an intention to create a trust * * *." 54 Am.Jur. p. 23. As stated in 42 Tex.Jur., p. 638, quoted with approval in Macias v. Macias, Tex.Civ.App., 148 S.W.2d 240, 242, "While a court of law looks only to legal ownership according to the deeds evidencing title from the common source, equity keeps its eye on the consideration that passed and protects the party who furnished it. In other words, the beneficial estate follows the consideration and attaches to the person from whom it came. Where only part of the purchase money was contributed by the person whose name does not appear in the deed, his ownership extends to the proportion that his contribution bears to the total price." "It is well settled that a parol trust may be created when the beneficiary has (as here) paid all or a part of the consideration for the land, or has (as here) obligated himself to do so, under an agreement made prior to or at the time of the conveyance". Elbert v. Waples Platter Co., Tex.Civ.App., 156 S.W.2d 146, 150. Restatement of the Law of Trusts, pp. 1389, 1391, 1394.

The other points have been considered and are respectfully overruled.

The judgment of the trial court is affirmed.

### On Motion for Rehearing.

Rehearing denied.

LINCOLN, Justice (dissenting).

This dissent from the action of the majority in overruling the motion for rehearing is confined to one point only. Since our original opinion and judgment of affirmance, I have reached the conclusion that we were in error in overruling appellants' contention that the trial court had no inherent right to vacate its judgment of dismissal for want of prosecution, which was entered on August 8, 1950. On that date the district judge signed a blanket order of dismissal of 182 cases, this one included, each case being captioned on the blanket order by style and docket number. At the same time there was presented to him the docket sheets from the judge's trial docket in each of the 182 cases, and in this case there was stamped on the docket sheet "Dismissed for want of prosecution." The date, August 8, 1950, was also stamped on the docket sheet in connection with the order, and the order was signed by the district judge. It is clear that he signed the two orders as a judicial act, and it must be assumed that he knew the import of them. He accepted the docket sheet with its notation and thereby adopted it as his own. This, with his signature to it, constituted it as a pronouncement of his judgment.

That this case was active at the time is fully sustained by the record. As such it probably should not have been dismissed. But the court had the power to do so. It appears that when he made the orders he was acting under misinformation of fact inadvertently given him. But in my opinion the orders were validly within the exercise of his discretion, and were validly made. As such they became final upon adjournment of the term, not having been vacated during the term. The court had plenary power during the term to vacate the judgment, with or without motion or notice, if he concluded that the judgment should not have been rendered and entered. 25 Tex.Jur., p. 520, Sec. 120; Id., p. 544 et seq. But I am unable to support the conclusion that the trial court had the inherent right to set aside the order of dismissal and to reinstate the case after the expiration of the term at which the dismissal was

entered. While many authorities support this conclusion, 25 Tex.Jur., p. 545, Sec. 150, it is directly so ruled in Love v. State Bank & Trust Co., 126 Tex. 591, 90 S.W.2d 819, opinion adopted by the Supreme Court, and Eskridge & Williams v. Merchants State Bank & Trust Co., Tex.Civ.App., 173 S.W.2d 518, writ refused. In each of those cases almost the identical question was presented as in this case. I will not extend this opinion by quoting from them as the decisions are readily available.

The testimony of the district judge shows that the making and entry of the judgment was a mistake. That being true, a judgment was entered when none should have been entered. The recourse allowed by law in such case, after expiration of the term, is by bill of review unless appeal has been taken. There was neither appeal nor bill of review filed, and, as held in the two cited cases, the motion to reinstate was not sufficient as a bill of review.

The foregoing opinion of the court on this matter is grounded upon the contention that the entry of the judgment was a clerical error. There is no question but that the court has the inherent right to correct clerical errors when the judgment entered does not speak the truth as to the judgment rendered. But I do not see that this case comes within that purview. According to the contention of appellees no judgment of dismissal should have been rendered at all. If a judgment of some kind was to be entered, but that which was entered did not speak the truth as to the judgment actually rendered, then the rule relied upon would apply. That was the situation in Coleman v. Zapp, 105 Tex. 491, 151 S.W. 1040. What is asserted here amounts to a judicial error, and not merely a clerical error. The contention that the error was upon the part of a deputy clerk in spreading the formal judgment of dismissal upon the minutes, in my opinion, cannot be sustained. It was the duty of the district clerk under the law to enter the judgment in the minutes. It had been duly signed, the docket sheet and the formal judgment. The instruction of the district judge to the clerk that it be not entered was not a judicial act. He had the inherent power during the term to correct his own erroneous judgment and to completely vacate it and set it aside through another judicial act. But unless and until this was done, it was the duty of the district clerk's office to spread the orders on the minutes.

It is with considerable reluctance that I have reached these conclusions, but I feel that they are in keeping with the decided cases on the matter under review. It appears to me that it would be a most harmful precedent to hold that when judgments are formally made and entered, and the term of court has expired, the district judge has the inherent power to blot out the judgment previously entered because of a mistake in its rendition and entry. If he has the inherent power to do this he can do it without motion, and even without notice. Judgments would thus lose their verity. I also believe it is not a good precedent to hold that after a judgment has been rendered by a district court, the judge may, without notice to the parties, and without motion, instruct the district clerk not to spread a formal judgment upon the minutes in keeping with a judicial order made by the court. In either such case, the law affords proper procedure to correct the mistake. Regrettable as would be a reversal and rendition of this judgment, it is my considered opinion that the trial court did not have jurisdiction at the time this case was tried because of the prior order of dismissal for want of prosecution.