Pearl Locke COCHRAN et al., Appellants,

v.

John COCHRAN, Temporary Administrator of the Estate of O. L. Cochran, Jr., Deceased, Appellee.

No. 13342.

Court of Civil Appeals of Texas. Houston.

March 10, 1960.

Rehearing Denied March 31, 1960.

J. Edwin Smith, Houston, Smith & Lehmann, Houston, of counsel, for appellants.

Hutcheson, Taliaferro & Hutcheson, Thad T. Hutcheson, Walter P. Zivley, Houston, for appellee.

WERLEIN, Justice.

This is an appeal by Pearl Locke Cochran, W. Scott Red, and Bruce Billingsley, from a judgment of the District Court of Harris County disqualifying appellants, W. Scott Red and Bruce C. Billingsley, as attorneys for the said Pearl Locke Cochran, sometimes called herein Pearl Locke, on the basis of their prior representation of O. L. Cochran, Jr., the deceased brother of appellee, John L. Cochran, temporary administrator of the estate of O. L. Cochran, Jr., Deceased, and applicant for letters of permanent administration upon said estate pending in the Probate Court of Harris County, Texas.

In the probate proceedings appellee's motion to disqualify said Billingsley and Red was denied. On appeal the District Court decreed that said attorneys were disqualified until Pearl Locke Cochran has been declared the wife of the deceased by final decree of a court of competent jurisdiction.

It is the contention of appellants that said attorneys are not disqualified because they never represented the deceased former client on any dispute as to marital status, and further because they represent a party asserting a derivative right under the deceased former client. It is also their contention that the representation of the deceased former client involved solely the preparation of instruments to be delivered to third parties and hence there was no privilege in the communications relative thereto, and further, that any privilege which might have existed terminated with the death of the deceased.

In the main case, Pearl Locke Cochran asserts her right as the alleged widow under a common law marriage to be administratrix of the estate of the deceased. John Cochran asserts his right as the next of kin, denying the existence of any common law marriage. There is no dispute relative to the existence, identity and relationship of the blood heirs of the deceased.

No findings of fact or conclusions of law were requested or filed. The trial court in its judgment, however, found that the representation of the said Pearl Locke by said attorneys in any action wherein the said Pearl Locke seeks to establish herself as having been the wife of O. L. Cochran, Jr., Deceased, or wherein, prior to having been so declared by final decree of a court of competent jurisdiction, she seeks to assert rights based on such alleged status, is professionally inconsistent with that firm's prior or representation of O. L. Cochran, Jr., Deceased, and prejudicial to John Cochran, the temporary administrator, and other blood heirs of the said O. L. Cochran, Jr., and is prohibited by the Canons of Ethics of the State Bar of Texas.

In order to determine whether the employment of said attorneys by O. L. Cochran, Jr., in his lifetime is professionally inconsistent with their employment by Pearl Locke in connection with the estate of the deceased, it is necessary to consider the evidence with respect to their former representation and what their present employment may require of them. The testimony shows that Mr. Billingsley and the firms with which he has been connected represented O. L. Cochran, Jr., in legal matters during approximately the last five or six years of his life. Several months prior to the death of O. L. Cochran, Jr., on May 27, 1957, Mr. Billingsley and his firm represented Cochran in the preparation of two lengthy trust instruments involving approximately $500,000 of assets for the grandnieces and grandnephews of the donor. In connection with the setting up of such trusts, Mr. Cochran gave Mr. Billingsley written authority to enter his safe deposit

box at First National Bank, identifying him as "My attorney, Mr. Bruce Billingsley." Mr. Billingsley entered the box and removed certain stock certificates for the trusts on or about April 3, 1957. The fee for such services was $4,000, which was paid. Pearl Locke contacted Mr. Billingsley after Cochran's death to ascertain whether he had left a will. Prior to that time Mr. Billingsley had seen her on several occasions although he had never been formally introduced to her, and Mr. Red had not met her until after Cochran's death.

In addition to the preparation of the two trust instruments aforesaid, Mr. Billingsley had done other work for Mr. Cochran in his lifetime consisting mainly of the preparation and examination of deeds, division orders, leases, and the approval of legal instruments which had been drawn up by others and submitted to him for examination. During his representation of Mr. Cochran, Mr. Billingsley did some work on a boundary dispute. He also drew up or approved certain instruments in which Mr. Cochran was described as a single man. Mr. Billingsley testified that he recognized that such instruments were going on public record, and that he did not fail to approve the same although Mr. Cochran was described therein as a single man. They were acknowledged before Mr. Billingsley's secretary. It was also shown that in a partition agreement which was signed by the deceased he was described as a single man, and such agreement or a copy thereof had been procured by Mr. Billingsley in connection with setting up the trusts.

In the preliminary inheritance tax report filed by said attorneys for Pearl Locke, there was included considerably more property than was included in the preliminary report filed by the temporary administrator, the difference being that said attorneys for Pearl Locke included in her report property of the value of several hundred thousand dollars which had been placed in said trusts. In such report Pearl Locke was listed as wife entitled to all the personal property and one-half of the real estate.

Testimony showed that the employment of Billingsley and Red by Pearl Locke was to establish her claim as a common law wife and was on a contingent basis. In an effort to determine the facts as to her status, said attorneys approached the deceased's tax accountant, one R. F. Krueger, with whom Mr. Billingsley had been in contact in the preparation of said trusts, and submitted a questionnaire to Mr. Krueger in an effort to obtain information concerning the income tax returns of the deceased and any alleged recognition of the status of Pearl Locke.

The testimony further showed that the files of O. L. Cochran, Jr.'s legal matters belonging to Billingsley and Red were withheld from the temporary administrator for several weeks and until Pearl Locke's deposition was taken, although he was later given the opportunity to inspect and examine such files. Mr. Billingsley testified in effect that they had a primary or superior duty toward Pearl Locke as their client with reference to said files as compared with the admitted blood relatives and the intestate decedent and the administrator of his estate. It was stipulated that if either Mr. Billingsley or Mr. Red was disqualified, then such disqualification would extend to the other or to their firm or association and the employees thereof.

Based upon such evidence and other evidence which will be referred to hereinafter, the trial court decreed that the motion to disqualify said attorneys as attorneys for the contestant, Pearl Locke, be sustained to the extent that they, their firm or association and all members and employees thereof, are disqualified and directed to terminate forthwith said employment and to cease from representing said Pearl Locke in Cause No. 61,528 in the Probate Court of Harris County, Texas, or in any appeals therefrom or in any other action wherein the said Pearl Locke seeks to establish herself as having been the wife of O. L. Cochran, Jr., Deceased, or, prior to having been so declared by final decree of a court of competent jurisdiction, seeks

to assert rights based on such alleged status.

We feel confident that in so decreeing the trial court recognized, as this Court recognizes, that the attorneys disqualified by the court as aforesaid, are lawyers of integrity and fine professional reputation who would not wittingly violate the State Bar Rules or Canons of Ethics, or engage in any practice which they might conceive to be improper or unprofessional.

■ This Court is not called upon to decide as an original proposition whether under the evidence said lawyers are disqualified. Our province is to determine whether there is any evidence to support the presumed findings of the trial court and the findings recited in the judgment. In doing so we must presume that the trial court resolved every disputed fact issue in favor of the winning party, and consider only the evidence which supports the judgment, disregarding all evidence in conflict therewith. Northeast Texas Motor Lines v. Dickson, 148 Tex. 35, 219 S.W.2d 795; McWilliams v. Muse, Tex.Sup., 300 S.W. 2d 643; Sgitcovich v. Oldfield, Tex.Civ. App., 220 S.W.2d 724, writ ref. It will be presumed that the trial judge found every issuable fact proposition necessary to sustain the judgment if supported by the pleadings and evidence. This Court must affirm the judgment if it can be sustained "on any reasonable theory supported by the evidence and authorized by law". See McDonald, Texas Civil Practice, Vol. 4, § 16.10, p. 1301.

The evidence shows that Pearl Locke first called said attorneys to ascertain if the deceased left a will. Shortly thereafter she employed them to represent her in her claim that she was the common law wife of Cochran. She testified by deposition that she called Mr. Billingsley on the theory that she knew he had represented Cochran. We think it may be assumed that in employing said attorneys she was actuated in part by the fact that through their representation of Mr. Cochran they became ac-

quainted with his business and assets and also possibly by the consideration that if they who had represented Cochran in his lifetime should now represent her, it would be distinctly advantageous to her by adding prestige and dignity to her claim.

■ At the time of such employment Mr. Billingsley was aware of his prior employment and of the trusts that he had drawn up for Mr. Cochran. All of his representation of Mr. Cochran was on the basis of Mr. Cochran being a single man. He had been so described in legal instruments prepared or approved by Mr. Billingsley. Now Pearl Locke was seeking to employ him on the basis of Cochran being a married man. If married, then Pearl Locke, not having been a party to the trust instruments in which Cochran set aside for his blood relatives property valued at nearly one-half million dollars, might insist upon attacking such gifts as in fraud of her interest in the community property, if any. Thus at the time of the employment said attorneys were evidently confronted with the dilemma of attacking such trusts in the best interest of their new client, to the detriment of their former client's desires as expressed in the trust agreements, or refusing to do so, possibly to their new client's detriment. We think the situation must be appraised as of the time of the employment. At that time there was a definite conflict of interests. Said attorneys were called upon to attack and nullify their own work in connection with the trusts. Indeed, when asked whether she was going to attack the trusts, Pearl Locke refused to answer on advice of counsel. Moreover, at a conference between said attorneys and the attorneys for the temporary administrator, Mr. Red stated, according to witness Palmer Hutcheson, Jr., "We think we can set those trusts aside for the widow", or words to that effect. He also said he could conceive of a situation where he would have to attack the trusts. Said attorneys would not at that time give any assurance that they would not attack the trusts. According to the same witness, Mr.

Billingsley stated, "You know I think those trusts can be set aside on behalf of the widow", and also that he hadn't made up his mind whether he would attack them.

■ After the motion to disqualify said attorneys was filed, Mr. J. Edwin Smith, representing them, stated that no attack was being made on the trusts and none was contemplated. Such assurance did not affect the situation as it existed at the time the employment was entered into. Apparently it was made under pressure of the position taken by the administrator. There is ample evidence that initially the two employments were vitally conflicting and inconsistent. Clearly, the property comprising the trusts would not go to the heirs as such unless the trusts were attacked and set aside. We are of the view that even after the assurance was given by the attorney for appellants that the trusts would not be attacked there still existed such conflicting interests as might warrant the trial court in finding as it did.

There is evidence that in the preparation of the trust agreements Mr. Billingsley not only had conferences with Cochran but he also consulted appraisers and Cochran's accountant. After the trusts were set up he represented the trustee in negotiating oil and gas leases covering trust property.

The evidence indicates there was nothing in the files which said attorneys kept in connection with Cochran's business bearing upon the marital status of Cochran other than as hereinabove stated. Appellants contend that since said attorneys never represented Cochran in connection with any dispute as to marital status, and further because they are representing one having a derivative right under the deceased former client, they are not disqualified. We do not agree. We think they were disqualified from assuming employment that would put them in conflict with past employment. They had never questioned that Cochran was a single man when they represented him and prepared or approved instruments showing that he was single. More important, they knew from his execution of those instruments that he, himself, claimed to be single and also claimed all of his property as his separate estate. They had represented him on such assumption. They now propose to represent Pearl Locke on the assumption that Cochran had a common law wife all the time despite his assertions in the instruments they had drawn or approved, and despite the fact that no wife or community property is mentioned in the trusts set up. It would seem that their present position is at least antagonistic to the claim made by their former client that he was single, and antagonistic to his estate if their position is successfully maintained, and the new client proves Cochran was married to her. If any community property has been accumulated from the alleged marriage in 1931, and if Pearl Locke is in fact Cochran's widow, then she will take as an heir only Cochran's one-half thereof. The other one-half she owns in her own right and not as an heir, and her right thereto will be asserted not as a derivative right under Cochran but against him. Hence, her attorneys will be required to contend for that which duty to their former client and those claiming under him requires them to oppose.

■ The rules governing the State Bar of Texas, immediately following Article 320a–1, Vernon's Ann.Civ.St., are at least quasi-statutory, and have the same force and legal effect upon the matters to which they relate as the Texas Rules of Civil Procedure have to the matters to which they relate. See Rattikin Title Company v. Grievance Committee, Tex.Civ.App., 272 S.W.2d 948, no writ. Article XIII of the State Bar Rules, entitled "Canons of Ethics", Sec. 3, Subpar. 6, provides with respect to "Adverse Influences and Conflicting Interests" that " * * * a member represents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose." We think this provision is particularly applicable to the

instant case since said attorneys in representing Pearl Locke will be required to advance her claims no matter how detrimental they may be to the interests of the former client.

■ The inconsistency of the employments is further evidenced by the fact that Mr. Billingsley approached Mr. Krueger, the deceased's tax accountant, whom he had met in the preparation of the trusts, with a questionnaire seeking to obtain information concerning the income tax returns of the deceased and any recognition by Cochran of Pearl Locke as his wife. But for his former representation of Cochran, it seems doubtful that such approach would have been made. It clearly was placing the interests of Pearl Locke above those of the former client. The record does not show that Mr. Billingsley actually obtained confidential data or privileged information, other than which may appear hereinabove. Nevertheless a fiduciary relation had existed between him and his former client—so much so that he was even given access to Cochran's safe deposit box in the bank where he could examine his papers and possibly obtain confidential information. We think that under the circumstances of this case there was a privilege which Cochran might assert were he alive, and we are of the opinion that such privilege did not terminate with his death under the peculiar facts of this case. In Emerson v. Scott, 39 Tex.Civ.App. 65, 87 S.W. 369, no writ, the court, in discussing the attorney and client privilege, stated: "The client and his heirs, representatives, and devisees may claim the privilege and such privilege, remains in force until waived." See also 44 Tex.Jur., p. 1071, § 100, Witnesses; McCormick & Ray, Texas Law of Evidence, Vol. 1 (2d Ed.), § 488, p. 410.

■ Article 713, Texas Code of Criminal Procedure, provides:

" * * * that an attorney at law shall not disclose a communication made to him by his client during the existence of that relationship, nor disclose any other fact which came to the knowledge of such attorney by reason of such relationship."

This provision is a statutory declaration of the common law rule of evidence and applies to both criminal and civil cases. Williams v. Williams, Tex.Civ.App., 108 S.W.2d 297, no writ. See also McCormick & Ray, Texas Law of Evidence, Vol. 1 (2d Ed.), § 481, p. 400, where it is stated:

" 'Where legal advice of any kind is sought from a professional legal advisor in his capacity as such, the communications relating to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by the legal advisor, except the protection be waived.' "

We think the evidence will support an implied finding by the trial court that it would be difficult, if not impossible, under the facts of this case for said attorneys to represent Pearl Locke without disclosing some more or less confidential facts with respect to his property, or information which they obtained in the examination of the contents of his lock box in the bank, or from consulting with his tax accountant and bankers. See Subpar. 34 of the Canons of Ethics, State Bar Rules.

The attorneys in question handled important matters for Cochran over a period of years, and as hereinabove stated in preparation of the trusts in question had access to his personal safe deposit box and many facts involving his personal estate, all under circumstances wherein Cochran failed in any way to suggest or recognize the existence of a wife. We think that said attorneys should be readily available to testify to such significant facts on behalf of the administrator and heirs free of any professional obligation or financial incentive to advance the contrary claim of Pearl Locke by virtue of representing her, or be placed in an embarrassing position

with respect thereto. Sec. 3, Subpar. 16 of Article XIII of the State Bar Rules, provides:

"16. Appearance of Member as Witness for His Client. It shall be unethical for a member to accept a case when he knows that he will be a material witness, but a member may testify to any matter without being guilty of misconduct if the necessity therefor is occasioned during the trial of. the case."

While there is no direct evidence that at the time of accepting employment either of said attorneys knew that he would be a material witness, yet from all the facts and circumstances of the case, the trial court may have found that in all reasonable probability one, if not both, of said attorneys knew or at least anticipated that he would be called upon to testify as a material witness as to their representation of Cochran in his lifetime and his marital status.

In Barreda Corporation v. Ballenger, Tex.Civ.App., 116 S.W.2d 442, 448, writ dism., the court, in disqualifying an attorney because of conflict of interests, stated:

"On the facts stated, the adjudicated cases compel us to conclude that the court erred in overruling appellants' motion to disqualify Judge Seabury and his law firm, and in permitting them to represent appellees in this litigation. In People v. Gerold, 265 Ill. 448, 107 N.E. 165, 177, Ann.Cas.1916A, 636, the court said: 'The rule has long been firmly established that an attorney cannot represent conflicting interests or undertake to discharge inconsistent duties. When he has once been retained and received the confidence of a client, he cannot enter the service of those whose interests are adverse to that of his client or take employment in matters so closely related to those of his client or former client as in effect to be a part thereof. Weeks on Attorneys, (2d Ed.) §§ 120, 271; 1 Thornton on Attorneys, § 174. This rule is a rigid one designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties. He should undertake no adverse employment, no matter how honest may be his motives and intentions. * * * He is not, as a general rule, allowed to divulge information and secrets imparted to him by his client or acquired during their professional relation unless authorized to do so by the client himself.' "

In T. C. & Theatre Corp. v. Warner Bros. Pictures, Inc., D.C.S.D.N.Y., 113 F. Supp. 265, 268, the court, in discussing the duty of a lawyer, stated:

"A lawyer's duty of absolute loyalty to his client's interests does not end with his retainer. He is enjoined for all time, except as he may be released by law, from disclosing matters revealed to him by reason of the confidential relationship. Related to this principle is the rule that where any substantial relationship can be shown between the subject matter of a former representation and that of a subsequent adverse representation, the latter will be prohibited.

* * * * * *

"* * * The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent. Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained."

See also United States v. Standard Oil Co., D.C.S.D.N.Y., 136 F.Supp. 345.

Lawyers should not put themselves in the position where "even unconsciously, they might take, in the interests of a new client, an advantage derived or traceable to, confidences reposed under the cloak of a prior, privileged, relationship." Watson v. Watson, 171 Misc. 175, 11 N.Y.S.2d 537, 540. In the present case, appellant attorneys would in all probability feel called upon in their new relation to use against Cochran and his estate any knowledge or information which they may have acquired in their former representation of him during the five or six years they represented him as attorneys.

We think the cases relied upon by appellants are distinguishable. In Knox v. Long, Tex.Civ.App., 251 S.W.2d 911, 917, there were no conflicts between the position taken by the lawyers and their prior position, with respect to community property, and all the parties concerned were admittedly members of the family circle by blood or marriage. The court stated:

> "It is to be implied from the trial court's decree that the attorneys were not disqualified, that the court found from the evidence that there were no conflicts between their prior position when they represented W. C. Knox and his wife in behalf of the community and their present position wherein they represent the daughter of W. C. Knox, individually in her claim to one-half of the community estate."

In Ellerd v. Randolph, Tex.Civ.App., 138 S.W. 1171, writ dism., cited by appellants, the property was presumed to be community property in the prior representation, and hence there was no adverse claim between the parties, husband and wife at that time, and there was no issue about whether the woman involved was the wife.

In the case of In re Hardwick's Estate, Tex.Civ.App., 278 S.W.2d 258, ref., n. r. e., the court merely recognizes the exception that, in a will contest, the fact that the at-torney for the proponents drew the will does not make him incompetent to testify, especially if he drafted the will in question, and if he has not been employed upon a contingent fee.

Hudson v. Fuson, Tex.Civ.App., 15 S. W.2d 166, also cited by appellants, was a case involving the application of the dead man's statute (Article 3716, V.A.T.S.). Such case also recognizes the established exception that an attorney who drafted the will for the testatrix could testify in a will contest.

In Pondrum v. Gray, Tex.Com.App., 298 S.W. 409, 412, the court applied the rule of no privilege during the lifetime of the client where the attorney had prepared a deed that was in issue. The court stated, among other things:

> " 'A conveyancer is not a legal advisor or a professional advisor in any proper sense of those terms and a communication made to a conveyancer is not privileged. This rule has been applied to the drawing of deeds, mortgages and agreements.' "

We think Pondrum v. Gray is factually distinguishable from the instant case and does not militate against our holding in this case. The case of Glover v. Patten, 165 U.S. 394, 17 S.Ct. 411, 41 L.Ed. 760, relied on by appellants, is also distinguishable. The court there held that in a suit by the devisees under a will, statements made by the deceased to counsel respecting his execution of the will or similar document, are not privileged. While such communications might be privileged if offered by third persons to establish claims against an estate, they are not within the reason of the rule requiring their exclusion, when the contest is between the heirs or next of kin. In the instant case under the judgment of the trial court, the disqualification exists only until such time as Pearl Locke may prove in a court of competent jurisdiction that she is actually the surviving wife of the deceased.

After a careful examination of the record in this case and the authorities cited, we are unable to say that the judgment of the Trial Court finds no support in the evidence. It is, accordingly, affirmed.