Cedric Lee PANNELL, Appellant,

v.

The STATE of Texas, Appellee.

No. 61527.

Court of Criminal Appeals of Texas,
En Banc.

Feb. 29, 1984.

Joe E. Weis, Larry W. Green, Greenville, for appellant.

Jerry Spencer Davis, Dist. Atty., Greenville, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

McCORMICK, Judge.

On original submission, a panel of this Court held that appellant, after having counsel appointed for him, waived his right

to counsel and gave a voluntary confession to authorities. We granted appellant's motion for leave to file his motion for rehearing to consider, among other things, the fourth ground of error which was raised in his original brief but not specifically addressed by the panel opinion.

Appellant contends that because the district attorney interviewed appellant without attempting to obtain the consent of his court-appointed attorneys the district attorney violated Disciplinary Rule 7–104(A)(1) of the Code of Professional Responsibility, a provision of the laws of the State of Texas. Appellant argues that since a law of the State of Texas was violated the admission of the confession into evidence violated Article 38.23, V.A.C.C.P.

Disciplinary Rule 7–104(A)(1) provides:

"(A) During the course of his representation of a client a lawyer shall not:

"(1) Communicate or cause to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or by law is authorized to do so."

See also, State Bar of Texas, Committee on Interpretation of the Canons of Ethics, Opinion 137 (1956).

Article 38.23, V.A.C.C.P., provides as follows:

"No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

"In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained."

Initially, let us note that we have thoroughly reviewed the record and agree with the panel that appellant made a knowing and intelligent waiver of his right to counsel followed by a voluntary and knowing confession. The question before us is then the following: Does a violation of a disciplinary rule constitute a violation of State law?

The federal courts have been presented with a similar question in several cases. In *United States v. Thomas*, 474 F.2d 110 (10th Cir.1973), cert. denied 412 U.S. 932, 93 S.Ct. 2758, 37 L.Ed.2d 160 (1973), a special agent for the New Mexico Bureau of Narcotics and Dangerous Drugs obtained a written statement from Thomas in the absence of and without the knowledge of Thomas' attorney. After noting that Thomas had requested the interview and had read and signed a *Miranda*-type waiver of rights form, the Court of Appeals found that the canons of ethics governing the actions of attorneys in federal courts had been violated. However, the Court affirmed Thomas' conviction on the following basis:

"A violation of the canon of ethics as here concerned need not be remedied by a reversal of the case wherein it is violated. This does not necessarily present a constitutional question, but this is an ethical and administrative one relating to attorneys practicing before the United States courts. The problem is initially one for the trial courts; however, in appeals such as this in the future the concerned attorneys will appear before this Court and consideration of the matter will be therein undertaken as to occurrences taking place after this opinion has been circulated." 474 F.2d at 112.

See also: *United States v. Four Star*, 428 F.2d 1406 (9th Cir.1970), cert. denied 400 U.S. 947, 91 S.Ct. 255, 27 L.Ed.2d 253 (1970), in this the Court also found a violation of professional ethics but affirmed Four Star's conviction. The Fifth Circuit has also found that ethical violations alone in these situations will not justify reversal when the record clearly shows that a defendant waived the presence of counsel. *Wilson v. United States*, 398 F.2d 331, 333

(5th Cir.1968), cert. denied 393 U.S. 1069, 89 S.Ct. 727, 21 L.Ed.2d 712 (1969).

Let us now turn to the Texas scheme. In 1939, the Texas Legislature enacted the State Bar Act, Article 320a–1, V.A.C.S. This act created the State Bar, denominating it "an administrative agency of the Judicial Department of the State." Article 320a-1, Section 2, supra. The act provided that the Supreme Court of Texas should promulgate rules and regulations for disciplining, suspending and disbarring attorneys. The Supreme Court was also to prescribe a code of ethics governing the professional conduct of attorneys. Article 320a–1, Section 4, supra. In February of 1940, the Supreme Court approved its first set of rules and code of ethics.

In 1971, a new Code of Professional Responsibility was promulgated by the Supreme Court. Section 8, Article XII, Rules Governing the State Bar of Texas, following Article 320a–1, V.A.C.S. (1973).

The 66th Legislature enacted a new State Bar Act effective June 11, 1979. This new act retained the administrative status of the State Bar and again empowered the Supreme Court to adopt rules and regulations pertaining to conduct of the members of the State Bar. Section 8, Article 320a–1, supra (Supp.1980). In an order dated June 11, 1979, the Supreme Court decreed that the Code of Professional Responsibility should continue to be in effect. See also, 7 Tex.Jur. 3rd, Attorneys at Law, Sections 8 and 9 (1980).

Are these rules governing the conduct of attorneys in Texas considered to be laws of the State of Texas? As noted above, the Code of Professional Responsibility was not promulgated by the Legislature, the law-making body of this State, but by the Supreme Court, part of the judicial branch of the state government. Article III, Section 1, Texas Constitution; Article V, Section 1, Texas Constitution. As noted in the very language of the State Bar Act, the Code of Professional Responsibility was prepared for an "administrative agency"— the State Bar of Texas. Thus, the rules contained therein were to be used and applied in an administrative capacity. Furthermore, several cases have found the State bar rules are "quasi-statutory" and "have the same force and legal effect upon matters to which they relate as the Texas Rules of Civil Procedure have to matters to which they relate." *Rattikin Title Company v. Grievance Committee of the State Bar of Texas,* 272 S.W.2d 948 (Tex.App.— Ft. Worth, 1954, no writ history); *Cochran v. Cochran,* 333 S.W.2d 635 (Tex.Civ.App. —Houston, 1960, ref. n.r.e.); *State v. Dancer,* 391 S.W.2d 504 (Tex.App.—Corpus Christi, 1965, ref. n.r.e.). But see: *Silverman v. State Bar of Texas,* 405 F.2d 410, 414 (5th Cir.1968), on remand 303 F.Supp. 486 (W.D.Texas 1969), where the Texas State Bar "concedes that its Rules 'have the force and effect of statutes in this state.'"

■ Because of all the foregoing, we now hold that the disciplinary rules of the Code of Professional Responsibility are not laws of the State of Texas as were contemplated by Article 38.23, supra. Thus, violation of one of these disciplinary rules in obtaining evidence for a criminal proceeding will not bar introduction of that evidence at trial. Article 38.23, V.A.C.C.P. We agree with our brothers in the federal system that such ethical violations are to be dealt with by means of the administrative mechanisms specially established for dealing with such unethical conduct. Appellant's first ground of error is overruled.

In his second ground of error, appellant argues that the panel opinion erred in finding no testimony that the prosecutor offered appellant a life sentence in exchange for his confession.

The record shows that during the hearing on the motion to suppress appellant testified that when he notified the jailer he wanted to plead guilty the district attorney was telephoned. Appellant was allowed to speak to the district attorney over the telephone. Appellant testified that when he talked to the district attorney appellant asked the district attorney if the "deal" was still good. Appellant testified the district attorney replied in the affirmative and

told appellant that appellant would have to make a statement. Nothing specific was said about the terms of the "deal" but appellant interpreted "deal" to mean a life sentence since the district attorney had previously mentioned such an arrangement to appellant's court-appointed attorneys.

■ Our review of the record supports the finding of the panel opinion. Nowhere in the record is there testimony that the district attorney personally offered appellant a life sentence in exchange for a confession. There is testimony that appellant interpreted the remarks of the district attorney to convey such an offer, but that is not the same thing. The record does show that the district attorney and his staff had mentioned to appellant's attorneys the possibility of a life sentence in exchange for a guilty plea but there was never any formal offer of a life sentence in exchange for a confession made directly to appellant by the district attorney. All of the State's witnesses at the hearing on the motion to suppress testified that no promises were made to appellant in exchange for his confession and that he knowingly and voluntarily confessed. The trial court found the confession to be voluntarily given and the record supports such a finding. Appellant's second ground of error is overruled.

■ Next, appellant contends the panel opinion erred in relying on *Goss v. State*, 580 S.W.2d 587 (Tex.Cr.App.1979), in holding that the trial court's refusal to quash the indictment was not reversible error. Appellant relies on *Brasfield v. State*, 600 S.W.2d 288 (Tex.Cr.App.1980), and *Evans v. State*, 601 S.W.2d 943 (Tex.Cr.App.1980), two cases in which the capital murder indictments failed to name the victims of the aggravating offense. Those cases can be distinguished from the instant case in that in the instant case appellant was convicted of the lesser included offense of murder, while in the two aforementioned cases the defendants were convicted of capital murder. In the case at bar, the failure to properly plead the victim of the aggravating element in no way harmed the appellant because the aggravating element

played no part in his conviction. Reversal would not cure the error because in effect it has already been cured, by the jury.

We are cognizant of our recent opinion in *Jeffers v. State*, 646 S.W.2d 185 (Tex.Cr. App.1983) (opinion on rehearing) in which we stated:

"The test for deciding the *sufficiency of an indictment* in the face of a motion to quash for insufficient notice is to examine the indictment from the perspective of the accused. *Drumm v. State*, 560 S.W.2d 944 (Tex.Cr.App.1977)....

"To require evidence reflected in a statement of facts to establish insufficient notice is to ignore the requirement that notice must appear on the face of the indictment. Examination of the indictment, not the evidence, is the ultimate test." (Emphasis added) *Jeffers v. State*, 646 S.W.2d at 189.

We are not departing from that holding. However, reversal of this case would be pointless. The harm has already been cured. The panel properly relied on *Goss v. State*, supra. Appellant's third ground of error is overruled.

On original submission, appellant complained that the trial court erred in failing to dismiss the indictment when he proved that the method of selecting a Hunt County Grand Jury foreman was racially discriminatory. On rehearing, appellant contends the panel erroneously overruled this contention. Appellant relies on *Rose v. Mitchell*, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979).

■ Our review of the record of the pretrial hearing convinces us that appellant failed to establish a prima facie case of systematic exclusion of black persons from serving as the grand jury foreman. Lee Bostick, the county auditor, testified that he had worked for Hunt County in various capacities since 1946 with the exception of a period of four years. His testimony on direct examination regarding the foremen of grand juries was as follows:

"Q. All right. To your knowledge since 1946 to your personal knowledge,

has there ever been a foreman of a duly constituted grand jury in Hunt County that's been of the black or the Negro race?

"A. I don't know any knowledge of it, no.

" * * *

"Q. All right. To your knowledge have you ever known of a foreman of a grand jury in Hunt County to be a black person?

"A. No, sir."

Mrs. Anne Prince, the district clerk for the 196th Judicial District testified that she had had an on and off employment association with the county since December of 1949.

"Q. All right. To your own personal knowledge, can you recall whether or not there's ever been a foreman served and sworn of a Hunt County grand jury?

"A. Not that I know of, sir.

"Q. That was of the black or Negro race?

"A. No, sir.

" * * * (

"Q. Okay. But to your knowledge no such, no such black or Negro foreman has ever served?

"A. Not that I know of, no, sir.

"Q. All right. And that memory dates back at least to 1950?

"A. Well, we were gone part of, for about ten years in there, but not for any time that I know of, no, sir.

"Q. Okay. Since you've been back to your knowledge has a black person ever served as grand jury foreman?

"A. No, sir.

"Q. Since you've been back working in the courthouse continuously?

"A. No, sir."

The evidence relied on in the case at bar is surprisingly similar to the evidence produced in *Rose v. Mitchell*, supra, which the Supreme Court found insufficient to constitute a prima facie case of discrimination. There is nothing in the record to show that either witness knew who had served as grand jury foremen in the years between 1946 and the time of trial. The defense attorney read a list of names to witness Bostick, whom Bostick identified as white individuals, but nowhere in the record is this list identified as a list of grand jury foremen nor does the record indicate that if so, what years these individuals served. Furthermore, neither of the witnesses expressed any knowledge as to the race of grand jury foremen before 1946. Thus, there was no positive testimony that no black had ever served as grand jury foreman—just that the witnesses had no personal knowledge of a black serving in that capacity from approximately 1946 to the time of appellant's trial.

In addition, even if the witnesses' testimony was sufficient to account for the years from 1946 to the time of trial, just as in *Rose*, there was no evidence as to the total number of grand jury foremen appointed in Hunt County during that time.

"Absent such evidence, it is difficult to say that the number of Negroes appointed foreman, even if zero, is statistically so significant as to make out a case of discrimination under the 'rule of exclusion.' ... Inasmuch as there is no evidence in the record of the number of foremen appointed, it is not possible to perform the calculations and comparisons needed to permit a court to conclude that a statistical case of discrimination had been made out ... and proof under the 'rule of exclusion' fails...." (Citations omitted) *Rose v. Mitchell*, 443 U.S. at 571, 99 S.Ct. at 3008.

Appellant's ground of error is overruled.

The appellant's motion for rehearing is denied and the panel opinion is affirmed.

CLINTON, Judge, dissenting.

A majority of the Court simply will not come to grips with appellant's challenge to selection of grand jury foremen. In tenor and tone the opinion of the Court En Banc echoes that of the opinion on original submission. Both reprise irrelevancies of the

past; neither correctly follows the lead of decisions rendered by the Supreme Court of the United States. I respectfully dissent.

The majority panel opinion noted negatively that composition of the grand jury that indicted appellant was not shown, although his complaint is directed to only the foreman of the grand jury. As to that, the opinion remarks, "[N]or was there any showing as to how the grand jury foreman is selected." Yet Article 19.34, V.A.C.C.P., and its predecessors have always provided that once the grand jury is completed, "the court shall appoint one of the number foreman." The venerable "presumption of regularity" leads us inevitably to the conclusion that the grand jury foreman is selected by the judge of the trial court in accordance with the law.

Though it does not reiterate what the panel opinion stressed was not shown, the majority opinion on rehearing is full of its own negativism. It fails to put in proper perspective the witnesses who did testify as to their knowledge that a black had not served as foreman of a Hunt County grand jury.

Trial of this cause was held in 1978—before the alternative method of selection of grand jurors was enacted. See Article 19.-01, V.A.C.C.P.,[1] as amended in 1979. Thus, the district clerk occupied a position so sensitive that one must swear not to converse with anyone selected to serve as a grand juror concerning any case or proceeding, Article 19.11; the clerk made out a copy of names of persons selected as grand jurors, certified to it and delivered the list to the sheriff for summoning, Article 19.13; after executing such summons, the sheriff returned the list to the clerk with his certificate showing date and manner of service. Once as many as twelve persons so summoned were in court, the judge or one acting under direction of the judge shall proceed to qualify each prospective grand juror, Articles 19.21–26, and impanel twelve of them. Considering general duties of district clerks in criminal matters,

e.g., Article 2.21, presence of the clerk in court during such proceedings may be presumed. Indeed, after the judge has appointed a foreman, the clerk may be directed to administer the grand jurors oath prescribed by Article 19.34.

The foreman of a grand jury may issue process, Article 20.10, and when the grand jury is not in session process is returned to the district clerk. The foreman signed each indictment, Article 20.20, and delivered them to the court, Article 20.21, but the clerk enters upon the minutes the fact that an indictment has been presented, Article 20.22.

Therefore, the district clerk of Hunt County is more akin to the clerks who testified they "had never known of a negro serving on a grand jury in Jackson County" in *Norris v. Alabama*, 294 U.S. 587, 591, 55 S.Ct. 579, 581, 79 L.Ed. 1074 (1935), to whom the Supreme Court alluded in *Rose v. Mitchell*, 443 U.S. 545, 572, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979), than the grand jury foremen therein who were not shown to be "knowledgeable about years other than the ones they themselves served," *id.*, at 573, 99 S.Ct. at 3009. Grand jury foremen come and go, but district clerks are more constant.

Similarly, a county auditor is charged with duties and functions relative to judges, grand jurors and grand jury foremen: "He shall keep a register of all warrants issued by the judges or the district . . . clerks on the county treasurer, and their dates and payment by the treasurer. Such clerks or judges shall daily furnish the auditor an itemized report specifying the warrants that have been issued . . . the names of the persons to whom payable, and for what purpose . . ." Article 1662, V.A.C.S. Indeed, unless for jury service, all warrants on the county treasurer must be countersigned by the county auditor. Article 1661, V.A.C.S. Generally, of course, the auditor is appointed by district judges with jurisdiction in the county. Article 1647, V.A.C.S.

1. Each cited article hereafter is in code of criminal procedure unless otherwise indicated.

Since the Judicial Districts Act of 1969, Hunt County has constituted the 196th Judicial District. Article 199a, Sec. 3.023, V.A.C.S. It has two continuous terms, the first commencing on the first Monday in January and the second on the first Monday in July of each year. *Id.*, 2.001. Formerly Hunt County was within both the 8th and 62nd Judicial Districts, and each district court had two terms of court, though the judge of the latter impaneled a grand jury only when in his judgment it was necessary to do so. Article 199, Secs. 8 and 62, V.A.C.S. Article 19.01 directs a district judge to appoint grand jury commissioners "at or during any term of court." Thus, again giving effect to the presumption of regularity, from 1946 to 1978, some 64 appointments to serve as grand jury foreman have been made by a district judge of Hunt County. The majority may apply the "rule of exclusion" should it desire.

However, the majority faults the district clerk and county auditor for their respective lack of knowledge as to race of grand jury foremen "before 1946." I merely observe that in *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), a period of eleven years sufficed to make a prima facie case.

I dissent.

MILLER, J., joins.

TEAGUE, Judge, dissenting.

Appellant contends in his appeal that his written confession was inadmissible evidence at his trial. Implicitly, he presents the following question for this Court to answer:

Because one of the Rules of the Supreme Court, see Art. XII, Section 8, Code of Professional Responsibility, DR 7–104, that was enacted in 1973, was violated by the District Attorney when his investigator took a confession from appellant, did this violation cause Art. 38.23, V.A.C.C.P. to become applicable to this cause, thus causing appellant's confession to become inadmissible evidence at his trial?

This question should be answered in the affirmative.

In light of *Henrich v. State,* 666 S.W.2d 185 (Tex.App.—Dallas 1983), which was a unanimous opinion authored by Justice Guillot of the Dallas Court of Appeals, the position I took when I filed a dissenting opinion to the original panel opinion in this cause, in which I concluded that appellant's confession was inadmissible evidence at his trial, has been strengthened.

In *Henrich v. State,* supra, the Court of Appeals was confronted with a factual situation similar to the one in this cause. There, two defendants were accused of criminal wrongdoing. One of the defendants, with his attorney, went and visited the assistant district attorney, a licensed member of the Bar of this State, who was handling the case. The opinion reflects that either before or during the visit the assistant district attorney was made aware that the other defendant had retained the services of another attorney. Notwithstanding this knowledge, the assistant district attorney entered into an agreement with the defendant who had come to his office, which agreement dictated that the defendant would record future conversations he might have with his co-defendant, which, of course, would occur without the knowledge of either the co-defendant or the co-defendant's attorney. The defendant subsequently recorded conversations between himself and his co-defendant. At the co-defendant's trial, and over objection, the trial court admitted into evidence the taped conversations. The Court of Appeals held that in admitting the taped conversations into evidence the trial court committed reversible error.

For reasons stated in its opinion, the Court of Appeals made several holdings. It first held that the disciplinary rules of the Code of Professional Responsibility of this State have the same force and effect as the Texas Rules of Civil Procedure have to the matters to which they relate. The majority opinion in this cause does not disagree with this principle of law. The Court

of Appeals next held that the Rules of Civil Procedure have the same force and effect as statutes or laws of this State. Although the majority opinion does not agree with this principle of law, it acknowledges that the State Bar of Texas has conceded that its Rules "have the force and effect of statutes of this State." *Silverman v. State Bar of Texas*, 405 F.2d 410, 414 (5th Cir.1968), on remand 303 F.Supp. 486 (W.D. Tex.1969).

In reaching its conclusion that the taped conversations were inadmissible evidence at the co-defendant's trial, and after finding that the assistant district attorney in that cause had violated DR 7–104, the Court of Appeals used the following reasoning:

"[W]hen the assistant district attorney violated DR 7–104, it was the same as violating the statute. Because the evidence obtained through the taped conversations was obtained in violation of a statute, the trial judge should have granted appellant's motion to suppress pursuant to TEX.CODE CRIM.PROC. ANN. art. 38.23 (Vernon 1979).

In this instance, however, a majority of this Court holds that even though it was established that in obtaining appellant's confession the District Attorney had violated DR 7–104, this did not, pursuant to Art. 38.23, V.A.C.C.P., render appellant's confession inadmissible evidence at appellant's trial. It errs in so holding because DR 7–104 is a statute or law of this State.

DR 7–104 provides in pertinent part the following:

(A) During the course of his representation of a client a lawyer shall not:

(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

Because District Attorneys and their assistants must be licensed attorneys at law, they are, like any other licensed attorney of this State, subject to the laws, statutes, or rules of this State which govern professional responsibility. See Art. 320a–1, Sections 12(a) and 12(b), V.A.C.S. Also see Art. 332d, V.A.C.S.

Art. 38.23, supra, provides in pertinent part:

No evidence obtained by an officer or other person *in violation of any provisions of the Constitution or laws of the State of Texas,* or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case... [Emphasis Added].

This statute is clearly and expressly worded in such a way that there can be no doubt that any evidence obtained by a peace officer or anyone else in violation of any provisions of the Constitution or laws of the State of Texas is not to be admitted at the accused's trial.

It is now beyond inquiry that when the Legislature of this State enacted the provisions of the State Bar Act, see Art. 320a–1, V.A.C.S., it intended to provide by statute a full and comprehensive set of laws to cover completely the practice of law and the regulation and disciplining of lawyers. By such statute, the Legislature also empowered the Supreme Court of Texas to enact laws in the form of a Code of Professional Responsibility, which it has done. The Code consists of laws that govern the professional responsibility of licensed attorneys of this State. Thus, the provisions of Art. 320a–1, supra, and the Code of Professional Responsibility are the kinds of "laws of the State of Texas" that were contemplated by the Legislature when it enacted Article 38.23, supra.

What is so obviously wrong with the majority opinion is its failure to understand the meaning of the term "laws," as that term is used in Art. 38.23, supra. For example, a duty of commission or omission that is placed upon licensed attorneys of this State by the Code of Professional Responsibility is a duty "imposed by law," e.g., *Howard v. Clack*, 589 S.W.2d 748 (Tex.Civ.App.—Dallas 1979), no writ histo-

ry, and as such is that kind of law the Legislature contemplated when it enacted Art. 38.23, supra.

Furthermore, the failure of the Legislature to restrict or limit the meaning of the phrase, "laws of the State of Texas," only to violations of "statutes" which the Legislature had in the past or would in the future expressly enact, e.g., *Honeycutt v. State*, 627 S.W.2d 417, 422 (Tex.Cr.App. 1982), reflects an intent on the part of the Legislature to implicate in the phrase, "laws of the State of Texas," not just Legislatively enacted statutes, but to implicate as well other kinds of laws, such as court made law, rules authorized by and lawfully adopted under a statute, administrative rules and regulations, municipal ordinances, orders of commissioners' courts, and the like.

Thus, the majority opinion errs when it implicitly holds that the phrase, "laws of the State of Texas," is restricted or limited only to statutory laws expressly passed and enacted by the Legislature in the past or to be passed and enacted in the future. The majority also errs when it implicitly holds that because the Code of Professional Responsibility is to be executed in an administrative fashion, it cannot constitute a part of the "laws" contemplated by Art. 38.23, supra. Overlooked by the majority, however, is the fact that the principal changes effected by the Administrative Procedure and Texas Register Act of this State, see Article 6252–13a, V.A.C.S., are that the agency must include in its decision findings of fact and *conclusions of law*. 2 *Tex.Jur.2d* Administrative Law, Section 95.

The majority opinion's reliance on Federal cases as authority for its holdings is misplaced because the Federal government has not ever seen fit to enact a mandatory exclusionary statute, such as the State of Texas did when it enacted Art. 38.23, supra, which states in no uncertain terms that under no circumstances may evidence obtained in violation of the Constitution or *laws* of the State of Texas, or of the Constitution or laws of the United States of America, be admitted in evidence against the accused at his trial. Thus, because a Federal prosecuting attorney might have engaged in unethical conduct in obtaining evidence, this, standing alone, will not cause the evidence to become inadmissible in a Federal Court. However, the same is not true of a prosecuting attorney in the State of Texas because the canons of ethics which govern him are part of the laws of this State.

In this instance, the facts are not in dispute that before appellant gave his confession to the District Attorney's investigator, the District Attorney was well aware that appellant was then represented by two court appointed attorneys and was also well aware of what his investigator was then doing. When the District Attorney's agent, his investigator, contacted appellant, appellant's attorneys were not notified or contacted. This was clearly a violation of the law as contained in DR 7–104. Also see *Henrich v. State, supra,* and compare, *Brewer v. State,* 649 S.W.2d 628 (Tex.Cr. App.1983).

Because appellant's confession was obtained in violation of a law of this State, it became inadmissible evidence at appellant's trial.

For the above and foregoing reasons, the majority errs in sustaining the trial court's decision to admit into evidence appellant's confession. I respectfully dissent to its holding that the confession was admissible evidence.